## ATCHISON, TOPEKA AND SANTA FE RAILROAD COMPANY

*v.*

## CHICAGO AND WESTERN INDIANA RAILROAD COMPANY.

*Filed at Ottawa June 13, 1896—Rehearing denied October 13, 1896.*

1. INTEREST—*on contract for sale of land—when it runs from time of taking possession.* A purchaser under a contract for the sale of land containing no provision as to possession or interest must pay. interest from the date he takes possession.

2. SAME—*right of vendor who is in willful default to interest on land contract.* A provision of a contract for the sale of land for the payment of interest will not be enforced in favor of a party in willful default, where it contains no provision as to possession but provides a date for performance.

3. SAME—*effect of vendor's neglect or inability to perform, in the absence of willful refusal.* The purchaser under a contract for the sale of land providing a time for performance, with a provision for prior possession and interest from a date named, must pay interest from the time fixed by the contract, where the vendor merely neglects or is unable to perform.

4. SAME—*when purchaser of land is not liable for interest after possession.* A railroad company purchasing lands for a freight yard and taking a lease of depot facilities and trackage privileges from another company, is not liable for interest not provided for in the contract because it takes possession in accordance with the contract, where the vendor company willfully and without excuse refuses to perform duties constituting conditions precedent to its right to the purchase money.

*A., T. & S. F. R. R. Co.* v. *C. & W. I. R. R. Co.* 54 Ill. App. 395, reversed.

APPEAL from the Appellate Court for the first District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

In the spring of 1887 the Atchison, Topeka and Santa Fe Railroad Company in Chicago sought to procure from the Chicago and Western Indiana Railroad Company terminal facilities in Chicago for the Atchison railroad system. Negotiations to this end were begun, and in

March, 1887, two preliminary contracts were made, each referring to the other, and together constituting a single transaction. One was an agreement for a deed of certain lands immediately east of the Western Indiana railroad, on which the Atchison company might lay its tracks connecting its railroad with the station property of the Western Indiana company. The other was a lease from the Western Indiana to the Atchison of passenger station facilities at Polk street for a period of 999 years, for which the Atchison company was to pay $100,000 annually, and also pay its share of the cost of maintaining such station and the tracks north of Forty-ninth street connecting with it, including, also, insurance, taxes, and such improvements as might, from time to time, become necessary. The agreement for a deed was undated, although it was executed tentatively in March. By its terms it was not to be effective until the lease should be executed and confirmed by the stockholders of the Western Indiana. The real estate embraced in this agreement was divided into two tracts, described as first and second. The lease was executed May 21, 1887, by the respective parties, and was shortly thereafter confirmed by the stockholders of the Western Indiana. Thereupon both contract and lease became effective as parts of one transaction. The contract provided that the possession of both properties should be given to the Atchison company immediately upon the execution and delivery of the agreement and the lease, and the confirmation thereof by the stockholders of the Western Indiana company. This agreement between the parties thereto is as follows:

"This agreement, made and entered into this......day of............', A. D. 1887, by and between the Chicago and Western Indiana Railroad Company, a corporation of the State of Illinois, party of the first part, and the Atchison, Topeka and Santa Fe Railroad Company in Chicago, a corporation of the same State, party of the second part:

"*Witnesseth:* That as a part and parcel of a certain contract of lease about to be completed between the parties thereto and with other parties, and only on condition that the same is finally completed, executed and confirmed by the stockholders of the party of the first part thereto, the party of the first part agrees to sell to the party of the second part the following described real estate, to-wit:

"*First*—All that property owned by the party of the first part lying south and east of a line drawn parallel with and distant four (4) feet from the outside rail of the most southeasterly railroad track of the party of the first part, north of the St. Charles Air Line railway, east of Clark street and south of a line 200.12 feet north from and parallel with the north line of Fifteenth street, being parts of blocks twenty-four (24), twenty-five (25), thirty-three (33), and of lots one (1) and three (3), of block thirty-two (32), in the assessor's second division of the east fractional north-east quarter of section twenty-one (21), township thirty-nine (39), north, range fourteen, east of the third principal meridian, and parts of lots twenty-nine (29), thirty (30), thirty-five (35) and thirty-six (36), and all of lots thirty-seven (37), thirty-eight (38), thirty-nine (39) and forty (40), in Wilder's north addition to Chicago, in the county of Cook and State of Illinois.

"*Second*—All of block six (6), in canal trustees' new subdivision of blocks in the east fractional south-east quarter of section twenty-one (21), township thirty-nine (39), north, range fourteen (14), east of the third principal meridian, except a part of the north-west corner thereof to be reserved for the use of the first party in making the contemplated new alignment and completing its system of four tracks, which said reserved strip is described as follows: Commencing at the north-west corner of block six (6) aforesaid, running thence easterly along Sixteenth street fifty (50) feet, thence by a straight line south-westerly to the south-west corner of lot three (3) of said

block, and thence along the west line of lots three (3), two (2) and one (1) in said block, to the place of beginning.

"The party of the second part agreeing to pay to the party of the first part for the property first above described the sum of two dollars per square foot, to be paid as follows:

"Whereas, in and by the said lease above referred to, the party of the first part is about to agree with the party of the second part to complete the alignment of its railroad tracks from Forty-ninth street northerly to the St. Charles Air Line railroad, and also to construct a viaduct on Eighteenth street and to complete four main tracks between Clark street and Forty-ninth street, as will more fully appear by the said contract of lease about to be executed between the parties hereto and the Chicago, Santa Fe and California Railroad Company and Anthony J. Thomas and Charles Edward Tracey, trustees, the same being the lease hereinbefore referred to:

"Now, therefore, it is agreed that the purchase price of the property first above described shall become due and payable upon completion by the party of the first part of its alignment as aforesaid, and of its four main tracks as aforesaid, as far north as Sixteenth street, and the completion and construction of the said viaduct. It is further agreed, that for the property secondly above mentioned the party of the second part shall pay a sum per square foot therefor to be agreed upon between the parties thereto, such agreement to be endorsed in writing upon this contract; or in case the parties hereto shall be unable to agree, then the reasonable market value of said property shall be fixed by an arbitrator to be agreed upon and named by the parties hereto, but if the parties hereto shall be unable to agree upon a single arbitrator then each of them will name one arbitrator, and the price fixed by the two arbitrators thus selected shall be the price to be paid by the party of the second part to the party of the first part for said real estate; and if the two

arbitrators thus chosen shall not be able to agree, then they shall jointly select an umpire, whose finding and decision shall be final, such agreement to be made or the amount so determined and endorsed before the final completion and delivery of the lease aforesaid. Possession of both of the properties above described shall be given by the party of the first part to the party of the second part upon the said agreement or lease above referred to being confirmed by the stockholders of the party of the first part and fully executed and delivered. And the purchase money of the said property secondly above described shall be paid by the party of the second part to the party of the first part upon the party of the first part procuring releases of two mortgages, incumbrances created by it on said property secondly described, one dated November 1, 1879, and the other December 1, 1882, both to Anthony J. Thomas and Charles Edward Tracey, as trustees, and the execution and tender to the party of the second part of a deed containing covenants of warranty therefor. And it is further agreed, that upon the performance of the stipulations of this agreement as to the time when the purchase price of the property first above described shall become due, and a release of the said two mortgages, liens placed on the said property by the party of the first part, and the tender to the party of the second part of a deed with covenants of warranty conveying said property first above described to the party of the second part, the party of the second part shall at once pay the purchase price therefor, it being understood that the party of the second part is satisfied to receive the title now existing in the party of the first part to said several tracts of land, together with releases of all mortgages placed thereon by the party of the first part, and to rely for its title to said property upon covenants of warranty to be contained in such deeds. It is further agreed that prompt payment of the purchase moneys at the times herein limited is of

the essence of this contract as to the sale of said lands, and if the purchase price named for either or both of said properties shall not be promptly paid at the times herein limited then this contract to convey any or either of said lands shall be void, and the party of the first part may at any time thereafter declare the said agreement to convey at an end, and by entry or suit, or either, at its option, recover possession of, and its estate and right and possession of, said land, as if this contract had never existed.

"And whereas, the party of the second part has purchased or agreed to purchase, or is about to have purchased for its use, certain lands or lots, to-wit: lot eleven (11), in block nine (9), and lot one (1), block twenty-one (21), both in the canal trustees' new subdivision above mentioned, which face upon Eighteenth street and other property in the vicinity:

"Now it is agreed, that in order to facilitate the construction of the viaduct above referred to in Eighteenth street, the second party shall discharge and release and hold the party of the first part free and clear of all claims for damages, and for all damages to the said lots last above described, accruing thereto by reason of the construction of said viaduct in Eighteenth street, and that it will also release the first party thereto from all damages which may result to any property which has been or may be purchased by the second party, or for its use, which will be injuriously affected by the construction of said viaduct.

"In witness whereof," etc.

The lease from appellee to appellant contained the following provision: "The lessor having agreed to allow and furnish to the lessee, for the benefit of the third party, the use of that portion of its line of road extending from Forty-ninth street, in the town of Lake, Cook county, to and into the city of Chicago, together with certain terminal accommodations in said city of Chicago, and the use of the station and other property, the said

lessor, for and in consideration of the premises, and for rents reserved, and the covenants and agreements on the part of the lessee and third party, has granted, demised and leased, and agreed to furnish, and by these presents does grant, demise and lease and agree to furnish, unto the said lessee, for the use of the third party, a right and privilege of using and running locomotives, cars and other rolling stock in use by said third party, for the purpose of the traffic of the third party, over and upon the main track or tracks of the railroad of lessor, meaning only the main tracks between the point of junction at Forty-ninth street, in the town of Lake, aforesaid, and the passenger depot of the lessor, in the city of Chicago, at Polk street, together with connections with lead tracks from said main tracks to and onto such property as the said lessee has or may acquire, in order to reach its freight buildings, freight yards and switch yards, and together therewith the right and privilege of using, for the purpose of the traffic of the third party, the passenger depot and its appendages of the lessor in the city of Chicago, and also of using the switches and side-tracks of the lessor, together with said main tracks between Forty-ninth street and the terminus at Chicago, to use in common with the five present tenants and the lessor."

The Western Indiana company proceeded with the work of completing the alignment, constructed the new tracks and the Eighteenth street viaduct, and had completed them by January 1, 1889. By the terms of the agreement the time had then arrived for the completion of the sale of tract first, but when the Atchison company requested the execution of a warranty deed of this tract and the release of the two mortgages, the Western Indiana company insisted that under the terms of the contract the Atchison company was not entitled to a deed with covenants of warranty such as had been delivered for tract second, but that the deed should contain a clause providing a defeasance of its rights to the property upon

its failure to comply with the terms and conditions of
the lease of May 21, 1887.  The Atchison company, on the
contrary, insisted that although the lease and the con-
tract of purchase were parts of one transaction, yet by
the terms of the agreement it was entitled to a straight
warranty deed for the lands agreed to be conveyed, and
that the purchase money was not due until such a deed
and the releases were tendered.   It expressed a willing-
ness to pay the purchase price upon the delivery of such
a deed together with the release of the mortgages, and
for the purposes of this case a tender of the purchase
price was then made, but it refused to accept a deed con-
taining any clause of condition or defeasance.   There-
upon, on July 5, 1889, it filed in the circuit court of
Cook county this bill for specific performance.   The bill
alleged the facts as already stated, making as exhibits
the agreement, the lease and the deed of tract second a
part of its averments.   It prayed a decree requiring the
Western Indiana company to procure the release of the
mortgages and to execute and deliver a deed of convey-
ance in fee simple, with covenants of warranty, and that
upon its failure the deed should be made by the master
in chancery.

On December 12, 1891, the Western Indiana company
filed its answer.   This admitted the execution of the con-
tract and lease, and also of the deed to tract second, but
insisted that said deed was made without any clause of
defeasance through an oversight.   It insisted that the
contract and lease were parts of one transaction, in fur-
therance of a single purpose, and that they were to be
construed as a single instrument, and that the convey-
ance provided for in the contract was intended to be,
and in fact was, subject to the conditions and covenants
of the lease; that the premises described in the contract
were appurtenant and essential to the use of the prem-
ises described in the lease, and that it was not intended
by the parties that the Atchison company should have

possession and control of the former except in connection with those embraced in the latter, and that therefore the Atchison company was entitled, under the contract, to receive only a deed containing a clause of defeasance, by which its rights thereunder should be contemporaneous with and limited by its rights in the premises embraced in the lease. It admitted that the Atchison company went into possession of both tracts described in the contract upon the execution thereof, at the same time that it took possession of the premises described in the lease.

On the hearing opening statements were made, and in course of the opening statement counsel for the defendant stated that the defendant would not offer any evidence in support of the allegations of its answer except the evidence hereinbefore set forth, and that, under the pleading and on the evidence which would be offered, no question would be raised by counsel for the defendant as to the right of the complainant to a decree of specific performance requiring the defendant to execute and deliver a deed of conveyance in the form prayed for in the bill, namely, a deed of conveyance in fee simple absolute, with covenants of warranty and without any defeasance or qualification, on the payment by the complainant of the purchase price fixed in the contract, and interest thereon from the first day of January, 1889, but that the defendant would contend and insist that any decree which might be entered should provide for payment by the complainant of interest on the purchase price from said first day of January, 1889. After the opening statements by counsel the pleadings were read to the court.

On hearing the following facts were admitted by the respective parties in open court, with like effect as if duly proved: That the defendant paid the taxes levied for the year 1887 on all the property described in said contract of June, 1887, set out in the complainant's bill, and thereafter, in the year 1889, the complainant paid

all the taxes levied and assessed on said property for the year 1888, and has since paid the taxes levied and assessed on said property for the years 1889, 1890, 1891 and 1892, respectively; that the area of the property first described in said contract is 98,724$\frac{8}{10}$ square feet; that the description set forth in the final decree entered herein is a correct description of the property firstly described in said contract.  No evidence in addition to said admissions of fact was offered on the hearing by complainant.

In addition to said admissions of fact the defendant gave in evidence on said hearing a letter to the president of the appellant company from a director and one of the five equal stockholders of the defendant company, an extract from which is as follows:  "As I understand it, the whole understanding and intent on both sides was that you bought  *  *  *  the property to go with the lease."  The defendant also offered a reply to that letter from the president of the complainant company, an extract from which is:  "It was thoroughly understood by the Chicago and Western Indiana company that in addition to securing passenger terminals by lease from that company we were at the same time securing, by purchase, lands for freight terminals.  To obtain this latter we made purchases not only from the Chicago and Western Indiana, but from the Chicago and Grand Trunk, and of various private individuals.  The same contract which provided for a lease by the Western Indiana company of certain rights, privileges and passenger facilities, provided with equal distinctness for a sale of certain lands describing them."

A decree was entered under these facts, finding the complainant was entitled to a deed of conveyance of tract first in fee simple absolute and to the release of the two mortgages upon it, and ordering that the complainant pay to the defendant within ninety days the agreed purchase price for said premises, with interest thereon at the rate of six per cent per annum from January 1, 1889,

to July 1, 1891, and at five per cent per annum from July 1, 1891, to the date of payment, and that upon said payment being made the Western Indiana company should at the same time deliver to the Atchison company a deed of conveyance of said premises in fee simple absolute, and procure and deliver sufficient releases of said mortgages, and that in default of the complainant paying said purchase price and interest aforesaid within the time named, its bill should be dismissed out of court with costs to be taxed, and the complainant should surrender to the defendant the premises described.

From that decree the complainant prosecuted an appeal to the Appellate Court for the First District, where a judgment of affirmance was entered, from which this appeal is prosecuted, and the errors assigned present the questions whether, first, said circuit court erred in finding that the defendant was entitled to interest on the purchase price of said premises from January 1, 1889, to the time of payment, as in its decree provided; second, whether said circuit court erred in decreeing that said complainant should pay interest on the purchase price of said premises from January 1, 1889, to the date of payment; third, whether said circuit court erred in neglecting and refusing to provide in its final decree that if the defendant should neglect or refuse to execute, acknowledge and deliver a proper warranty deed for said premises within the time fixed by said decree, the master in chancery of said court should execute, acknowledge and deliver such deed upon the payment within such time by the complainant of said purchase price, and legal interest thereon from the date of said decree to the time of payment; fourth, whether said circuit court erred in neglecting and refusing to provide in its final decree that upon the payment of said purchase price, with legal interest from the date of the decree, within the time limited in said decree, and upon the neglect or refusal of said defendant to deliver proper releases of said mortgages, the

same should be canceled and discharged as to said premises; fifth, whether said court erred in decreeing that the plaintiff should pay to the defendant the purchase price, and that thereupon the defendant should deliver to it the warranty deed and release, instead of decreeing, in accordance with the prayer of the bill and the provisions of the contract, that the defendant should tender "a deed with covenants of warranty conveying said property" and a release of the mortgages, and that then the complainant should pay the purchase money; and whether the Appellate Court for the First District erred in affirming the decree of the circuit court.

JOHN S. MILLER, EDGAR A. BANCROFT, and ELDON J. CASSODAY, (GEORGE R. PECK, of counsel,) for appellant:

Where the contract contains no provision as to possession or interest, the rule is that if the vendee takes possession he must pay interest from that date. *Calcraft* v. *Roebuck*, 1 Ves. Jr. 221; *Fludyer* v. *Cocker*, 12 id. 25; *Ballard* v. *Shutt*, L. R. 15 Ch. Div. 122; *Attorney General* v. *Christ Church*, 13 Sim. Ch. 214; *Powell* v. *Martyr*, 8 Ves. Jr. 146; *Rutledge* v. *Smith*, 1 McCord, 231; *Steenrod* v. *Railroad Co.* 27 W. Va. 1; *Bostwick* v. *Beach*, 103 N. Y. 414; *Binks* v. *Lord Rokeby*, 2 Swan. 233; *Boyle* v. *Roward*, 3 Desauss. 555; *Phillips* v. *South Park Comrs.* 119 Ill. 626; *Stevenson* v. *Maxwell*, 2 Comst. 408; *Gibson* v. *Clark*, 1 Ves. & B. 500; *Rhys* v. *Railway Co.* L. R. 19 Eq. 93; *Paton* v. *Rogers*, 6 Madd. 256; *Lang* v. *Moole*, 31 N. J. Eq. 413; *Blount* v. *Blount*, 3 Atk. 636; *Railroad Co.* v. *Gesner*, 20 Pa. St. 240; *Phillips* v. *Sylvester*, L. R. 8 Ch. App. 173; *Monro* v. *Taylor*, 8 Hare, 51; *Cleveland* v. *Burrill*, 25 Barb. 532; *Huntley* v. *Lyons*, 5 Munf. 342; Pomeroy on Contracts, sec. 430.

Where the contract contains no provision as to possession, but provides a date for performance and for the payment of interest thereafter, if either party is in willful default equity will refuse to enforce the terms of the agreement for the benefit of such defaulting party. *Leg-*

*gott* v. *Railway Co.* L. R. 5 Ch. App. 716; *De Visme* v. *De Visme*, 1 Mac. & G. 336; *Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 447; 75 id. 271; *Jones* v. *Mudd,* 4 Russ. Ch. 122; *Monk* v. *Huskinson*, id. 122; *Lofland* v. *Maull*, 1 Del. Ch. 359; *Riley* v. *Streetfield*, L. R. 34 Ch. Div. 388; *King* v. *Ruckman*, 24 N. J. Eq. 556; *Tewart* v. *Lawson*, 3 Sm. & G. 307.

Where the contract provides a time for performance, with a provision for prior possession and an express agreement for interest from a day named, and the vendor merely neglects or is unable to perform, the vendee shall have the rents and profits and pay interest from the time fixed by the contract. *Birch* v. *Joy*, 3 H. L. Cas. 565; *Cowper* v. *Bakewell*, 13 Beav. 421; *Baxter* v. *Brand*, 6 Dana, 296; *McKay* v. *Melvin*, 1 Ired. Eq. 73; *Brockenbrough* v. *Blythe*, 3 Leigh, 676.

HERRICK, ALLEN & BOYESEN, (OSBORN & LYNDE, of counsel,) for appellee:

The complainant is required to make out a much stronger case to support an application for the specific performance of a contract than the defendant is required to show to resist it. *Short* v. *Kieffer*, 142 Ill. 266; *Gas Light Co.* v. *Town of Lake*, 130 id. 42; *Railroad Co.* v. *Reno*, 113 id. 43; *Dintleman* v. *Gilbert*, 140 id. 602; *Leonard* v. *Crane*, 147 id. 52.

A familiar instance of the application of this principle is in requiring the payment of interest as a condition of equitable relief in cases where there is no obligation at law to pay interest; as on a bill filed to set aside a tax sale as a cloud, or where usury is set up. *Barnett* v. *Cline*, 60 Ill. 205; *Mapes* v. *Sharp*, 32 id. 13; *Tooke* v. *Newman*, 75 id. 215.

The vendee of land who is in possession and is not in default under his contract is in equity the owner, subject to the lien of the vendor for the unpaid purchase money. *Baldwin* v. *Poole*, 74 Ill. 97; *Smith* v. *Price*, 42 id. 399; *Baker* v. *Bishop Hill Colony*, 45 id. 264; *Lombard* v. *Chicago Sinai Congregation*, 64 id. 477; *Stevenson* v. *Loehr*, 57 id. 510.

When a deed vesting the legal title is made it has relation back to the date of the contract.    *Schneider* v. *Botsch,* 90 Ill. 577; *Gudgel* v. *Kitterman,* 108 id. 56; *Welch* v. *Dutton,* 79 id. 465; *Sutherland* v. *Goodenow,* 108 id. 537.

Appellant should pay interest on the purchase money from the date fixed by the contract for the completion of the sale.    Pomeroy on Specific Per. sec. 429; 2 Sugden on Vendors, (8th Am. ed.) 314; Fry on Specific Per. (3d Am. ed.) 649, 651.

This rule is expressly held in the following well considered English cases:    *Fludyer* v. *Cocker,* 12 Ves. 25; *Birch* v. *Joy,* 3 H. L. Cas. 565; *Powell* v. *Martyr,* 8 Ves. 145; *Ballard* v. *Shutt,* L. R. 15 Ch. Div. 122; *Attorney General* v. *Christ Church,* 13 Sim. Ch. 212.

The rule has also been uniformly followed in this country.    *Selden* v. *James,* 6 Rand. 464; *Rutledge* v. *Smith,* 1 McCord, 231; *Brockenbrough* v. *Blythe,* 3 Leigh, 619; *Bostwick* v. *Beach,* 105 N. Y. 661; *McKay* v. *Melvin,* 1 Ired. Eq. 73; *Breckenridge* v. *Hoke,* 4 Bibb, 272; *Steenrod* v. *Railroad Co.* 27 W. Va. 1; *Stevenson* v. *Maxwell,* 2 Comst. 413; *Covell* v. *Cole,* 16 Mich. 228; *Boyle* v. *Rowand,* 3 Desauss. 555.    And see the following cases in Illinois:    *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 478; 75 id. 271; *Phillips* v. *South Park Comrs.* 119 id. 629.

The cases cited for appellant do not conflict with the rule of these decisions.    A reference to some of the best considered cases will illustrate the rule and the reasons on which it is based.    In the following cases interest was allowed under the particular facts, notwithstanding the vendor remained in possession, he being charged with the rents and profits:    *Williams* v. *Glenton,* L. R. 1 Ch. App. 206; *Riley* v. *Streetfield,* L. R. 34 Ch. Div. 388.

In the following cases there was a long delay because of the failure of the vendor to remove incumbrances at the time fixed for performance, yet the court applied the rule and allowed the interest from the day when the contract should have been performed:    *Birch* v. *Joy,* 3 H. L.

Cas. 565; *Selden* v. *James*, 6 Rand. 464; *Rutledge* v. *Smith*, 1 McCord, 231; *Brockenbrough* v. *Blythe*, 3 Leigh, 676.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

It is apparent from a consideration of the facts appearing in this record, that the contract for the sale of the lots and land, and the lease, were, at the time of their execution, although separate instruments and covenants, a single contract. It was necessary for the appellant to have freight depot grounds and switch yards to make the use of appellee's road, under the lease, of any value, and by the covenants of the ·lease "connections with lead tracks from said main tracks to and onto such property as the said lessee has or may acquire, in order to reach its freight buildings, freight yards and switch yards," were to be furnished by the appellee company as a part consideration of the sum of $100,000 per annum to be paid under the lease by appellant. The situation of the two railroad companies was such that one, the appellee, had certain real estate which it would sell, which was suitable for railroad purposes, and had also a main and side-tracks entering the city of Chicago, with a depot centrally situated and located with reference to business, and for a sufficient consideration it was ready and willing to sell that real estate and lease the right of running trains over its tracks into its depot, and to have connecting switches from its main track to freight buildings, yards and switch yards of a lessee company for a long term of years. The appellant company, desiring to have access to and the benefits from the vast business of carriage to and from the city of Chicago, was desirous of leasing the right to run its trains over the main and side-tracks of the appellee company from Forty-ninth street to the depot of the appellee so located, and have the benefits to be derived from connecting switches with its freight buildings, grounds and switch yards. Even if the appellant com-

pany had such right to run over the track and into the depot of the appellee company, to be benefited thereby it became necessary to acquire land on which to place its freight buildings and yards and its switching yards. The contracts of leasing and for the purchase and sale of the land above mentioned were entered into under these circumstances. Immediate possession of the lands was given, by the terms of the agreement, by the vendor to the vendee, and the latter took possession thereof and entered into the lease, by which it acquired the right to run over the main track from Forty-ninth street into appellee's depot, for a consideration of $100,000 per annum to be paid by it.

By the terms of the agreement, upon the performance of the stipulations of the agreement as to the time when the purchase price of the property first described becomes due and a release of the two mortgages placed on the property by the appellee and a tender of a deed by the latter, the appellant was to at once pay the purchase money. Until this was done the money did not become due as to tract first. As to tract second, the purchase price was to be paid upon the tender by the Western Indiana company of a warranty deed, with releases of the mortgages. By the terms of the agreement the purchase price of tract second should be determined before the contract became effective by the confirmation of the lease. Immediately thereafter the deed and releases might be tendered and the consideration collected. No delay thereafter in the tender of deed and releases and in the payment of the consideration was contemplated by the contract. Such deed and releases were tendered, and the purchase price, without interest, was paid and accepted on or after June 21, 1887. The bill alleges that the consideration, "as described in said agreement," was paid about June 17, 1887. The date of the deed is June 17, 1887, and of the acknowledgment June 21, 1887. The answer admits that the deed was delivered upon the pay-

ment of the consideration "as provided in said agreement." The consideration was $214,560. The Atchison company went into possession on or before May 21, 1887. The agreement became effective and the purchase price of tract second became due if a release of the mortgages and a proper deed were tendered on May 21, 1887. The deed, however, was not tendered and the consideration was not paid until June 17, 1887, or later. Interest at six per cent on the purchase price for this time amounts to more than $1000, yet no interest was asked or paid. Such was the interpretation which the parties, appellee as well as appellant, put upon the contract at that time. As to tract first, the appellee parted with the possession before it was entitled to the purchase money. The ·vendor was to make certain improvements, procure a release of certain mortgages and tender a warranty deed before it was entitled to the purchase money.

This being the agreement, when the appellee refused to execute a deed except with a clause of defeasance, which was not in accordance with the agreement but violative of its terms and of the duty of appellee to appellant, it was an unreasonable default and refusal of the appellee to carry out its contract. The appellee refusing to comply with its contract, and by reason thereof the purchase money not being due, the appellant filed this bill for specific performance. By its answer the appellee placed a construction on the contract not authorized, and which was not in accordance therewith. At the hearing that construction was first abandoned and a deed tendered which was· in accordance therewith, but appellee for the first time insisted that interest should be allowed on the purchase price from about the time appellant took possession. This was ·by the trial court held to be equitable, and the decree in that regard was affirmed by the Appellate Court, on the principle that where there is a sale of land at a specified price, to be paid for at a subsequent date, and delivery

of possession to the vendee, the vendor is entitled to interest on the purchase money, on the principle that the value of the possession is, in its rents and profits, equal to the interest, even though the contract of sale is silent as to interest. This presents the first legal question raised by the assignments of error.

The appellee, being desirous of the advantages and benefits of the lease, by which appellant was to pay $100,000 per annum for 999 years, contracted to sell the land, pay off the mortgages, make certain improvements and tender a warranty deed, upon which the purchase money was to be paid by appellant. But these acts to be performed by appellee were, under the terms of the contract, to be distinctly performed with appellant in possession, and by its contract no provision was made for interest. The necessary construction of the language used in the contract, taken in connection with the circumstances attending the transaction, convinces this court that the benefits to be derived by appellee from its rights under its lease to appellant, and the consideration to be paid thereunder, were to be regarded as equivalent to a release of a claim of interest, inasmuch as the extension of time for making repairs, completing improvements, releasing mortgages and executing deed was in the interest and for the benefit of appellee, whilst during all that time it may be reasonably considered that appellant would not have undertaken to pay so high an amount under the lease unless it had its own switch yards, freight buildings and grounds, so that the lease would be of value to it. These were mutual advantages. The appellee was to receive the consideration per month under its lease, and, to induce appellant to pay that, was willing to deliver immediate possession of the lands sold, and receive the purchase money when it was able to comply with its contract in building its viaduct, the alignment of its tracks, the release of mortgages and the execution and tender of a warranty deed.

Such being the circumstances attendant on this transaction, and the contract being silent with reference to the question of interest, it is clear to this court that at the time of entering into this agreement the intention of the parties was expressed in the agreement itself, clearly and explicitly, and that intention was, as derived from the lease and agreement, that no interest was to be paid on the purchase money. Where a contract is in writing, courts of equity, like courts of law, must construe the contract according to the intention of the parties as expressed by its terms, and where there is doubt or ambiguity as to the intention of the parties, courts may take into consideration the surrounding facts and circumstances. But neither courts of equity nor of law are authorized to make contracts for the parties.

Such being the contract and its interpretation, we must determine whether, where a bill for specific performance is filed, equity will require interest on the purchase money to be paid by the vendee in possession, regardless of the fact that the vendor may be in fault in failing to comply with the terms of the contract in tendering a deed, and by otherwise failing to comply with its provisions and covenants.

A person cannot, as a matter of right, call upon a court of equity to enforce the specific performance of a contract for the sale of land. It is always within the sound discretion of the chancellor whether he will exercise the power, taking into consideration the contract and surrounding circumstances. In his exercise of that sound discretion he is governed by the rules and principles of equity jurisprudence. Where a contract of sale and purchase of land is entered into and a written agreement partly made, in equity the title is treated as being where the parties have placed it by the terms of their agreement, and for that purpose the vendor is held to be a trustee of the legal title for the benefit of the vendee, and the vendee is trustee of the purchase money for the

benefit of the vendor.    This equitable construction of
such contracts arises from the principle that equity con-
siders that which is agreed to be done as actually per-
formed.    As a result of this principle, where there is an
agreement in writing for the purchase and sale of lands,
and the vendee enters into possession, there are many
authorities holding that the purchaser entering into pos-
session must pay interest on the purchase money from
the time such possession commenced.    It is held inequi-
table that the vendee shall have the rents and profits
and retain the purchase money without the vendor being
entitled to interest.    Fry on Specific Performance (sec.
1418) states the rule thus:    "It follows from the princi-
ples already stated and discussed in this chapter, that
generally, in the absence of stipulation, a purchaser of
the estate which is the subject matter of the contract
must pay interest on the unpaid purchase money from
the time when his possession under the contract com-
menced until completion."    And again (sec. 1419):    "The
rule that the purchaser in possession shall pay interest
on the unpaid part of the purchase money will be applied
even in cases where the delay arises from the neglect of
the vendor, and the purchaser makes no actual profit out
of the land.    'The act of taking possession,' said GRANT,
M. R., 'is an implied agreement to pay interest, for so
absurd an agreement as that a purchaser is to receive
the rents and profits to which he has no legal title, and
the vendor is not to have interest, as he had no legal
title to the money, can never be applied.'"    And this is
again stated as follows (sec. 1425):    "So strongly does
the court hold to this principle, that a purchaser in pos-
session shall pay interest on the unpaid purchase money,
that it will look at any contract which appears to pre-
vent the application of this rule by the light of this
general principle of justice, and, it seems, refuse execu-
tion of it where it grossly violates this principle, for a
court of equity interposes only according to conscience."

It must be conceded the authorities go to the full extent of sustaining the statements made in the text of this able writer on this subject.   But there are exceptions to the general rule, and one exception is well stated by Sir WILLIAM GRANT, Master of the Rolls, who, in applying the rule and allowing interest, said in *Powell* v. *Martyr*, 8 Ves. 146: "The rule is perfectly clear and reasonable, that if a purchaser is let into possession and the reception of the rents and profits, he shall pay interest for his purchase money.   On the other hand, it must be admitted that a case may be in which he shall not pay interest notwithstanding he has the rents and profits, but it must be a strong case and clearly made out." It is important, therefore, to determine whether this case comes within the exceptions to the general rule.   In determining this question it is necessary to make a further reference to the authorities.

In *Minard* v. *Beans*, 64 Pa. St. 411, the contract was made March 9, 1868, to convey property October 1, 1868, for $25,000, payable $1000 cash, $5000 April 1, 1868, $4000 October 1, 1868, the balance to be secured by mortgage and payable in five installments, "with interest on all money remaining unpaid."   Possession was taken April 1, 1868.   The first three payments were made as agreed, and the deed was delivered October 1, 1868.   The vendor sued for interest on the $19,000 from April 1 to October, 1868, when the deed and mortgage were delivered.   The trial court allowed interest.   On appeal the Supreme Court, by THOMPSON, C. J., said: "A plain reading of its (the agreement's) terms in regard to the payment of the purchase money seems to be all that is needed to show that the claim of the plaintiff for interest is unsupported. * * * There was no contract to pay interest on any money falling due on the first of October, 1868.   * * * Interest, as a general, I may say universal, rule, is never demandable until money is due.   'It is,' say the books, compensation allowed to the creditor for delay of pay-

ment by the debtor.' It is completely due whenever a liquidated sum of money is unjustly withheld. It is a legal and uniform rate of damages allowed, in the absence of any express contract, when payment is withheld after it has become the duty of the debtor to discharge the debt. There was no express contract for the payment of interest up to the first of October, 1868. That is certain. Where is the principle that implies it? There was no debt due at that time bearing interest, and no overdue debt existed. It was a mistake to imply it from possession of the property by the vendee when no money was due or withheld. There is a class of cases where interest is always charged on money due, although not payable by the vendee. For instance, where the purchase money is payable at a certain time and the deed is to be made at the same time, if the vendor cannot make title at the time appointed for the payment of the purchase money, and the vendee retains possession, he must pay interest as a compensation for the profits he is receiving during the vendor's inability to make title. It would be grossly inequitable that the vendee should hold both the land and money and compensate for neither. These and kindred circumstances raise an obligation to pay interest, although the purchase money is not recoverable. But even here the money must be overdue. Where it is not due, and no contract exists for its payment while running to maturity, it must be an exceptional case where it is legally demandable. It is certainly not so, we think, in this case."

So in the recent case before this court, (*Fowler* v. *Harts*, 149 Ill. 592,) there was a sale of land for $8000, of which $500 was paid in cash, and a mortgage, on which $7500 debt and interest was claimed, was assumed. Foreclosure proceedings were then pending, and the vendor desired to resist them for the purpose of reducing the amount, and the vendee agreed to pay whatever reduction was made in the suit, to the vendor. At the end of the suit,

nearly four years later, the mortgage was cut down, and the vendee, who had been in possession all the time, paid the vendor the exact difference. The vendor sued for interest on that difference during that time. The court, by BAILEY, J., held that the contract did not provide for the payment of interest, saying: "It is impossible to deduce from this agreement any obligation to pay interest. The promise is merely to pay the amount of the reduction, and nothing is said about interest. To require the payment of interest would necessitate the importation into the agreement of terms which the parties did not see fit to adopt."

In *Lofland* v. *Maull*, 1 Del. Ch. 359, it was said: "Again, the ground taken rests upon what is not true as a principle of law, viz., that the obtaining possession is a consideration which creates an equitable obligation to pay interest.  *  *  *  It is too absurd a principle to be admitted, and is contrary to equity, that if a defendant takes possession of his own property, which it was lawful for him to do, that such an act should make him liable to pay a larger sum for the land than he had agreed to pay,— that the legal effect of doing a lawful act of exercising a right by possessing himself of his own property should make the defendant liable to pay interest beyond and in contradiction to the expressed terms of the written contract. I am of opinion that the claim for interest cannot be sustained."

Other cases might be cited where, under their particular facts, it was held the vendee in possession was not liable for interest, The decided cases so often necessarily depend upon the facts of the particular case that to deduce general rules therefrom applicable to every case is almost impossible. From apparently diverse and conflicting authorities, where a bill is filed for specific performance, we may deduce these principles:

*First*—Where the contract contains no provision as to possession or interest, if the vendee takes possession he

must pay interest from that date.   *Calcraft* v. *Roebuck,* 1 Ves. Jr. 221; *Fludyer* v. *Cocker,* 12 id. 25; *Powell* v. *Martyr,* 8 id. 146; *Ballard* v. *Shutt,* L. R. 15 Ch. Div. 122; *Attorney General* v. *Christ Church,* 13 Sim. Ch. 214; *Rutledge* v. *Smith,* 1 McCord, 231; *Wilson* v. *Herbert,* 25 Atl. Rep. 685; *Boyle* v. *Roward,* 3 Desauss. 555; *Bostwick* v. *Beach,* 103 N. Y. 414; *Phillips* v. *South Park Comrs.* 119 Ill. 626; *Steenrod* v. *Railroad Co.* 27 W. Va. 1; *Stevenson* v. *Maxwell,* 2 Comst. 408; *Binks* v. *Lord Rokeby,* 2 Swan. 223; *Gibson* v. *Clark,* 1 Ves. & B. 500; *Rhys* v. *Railway Co.* L. R. 19 Eq. 93; *Paton* v. *Rogers,* 6 Madd. 256; *Blount* v. *Blount,* 3 Atk. 636; *Lang* v. *Moole,* 31 N. J. Eq. 413; *Cleveland* v. *Burrill,* 25 Barb. 532; *Huntley* v. *Lyons,* 5 Munf. 342; *Monro* v. *Taylor,* 8 Hare, 51; *Phillips* v. *Sylvester,* L. R. 8 Ch. App. 173; *Railroad Co.* v. *Gesner,* 20 Pa. St. 240; Pomeroy on Contracts, sec. 430.

*Second*—Where the contract contains no provision as to possession, but provides a date for performance and for the payment of interest thereafter, if either party is in willful default equity will refuse to enforce the terms of the agreement for the benefit of the defaulting party. *De Visme* v. *De Visme,* 1 Mac. & G. 336; *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477; 75 id. 271; *Jones* v. *Mudd,* 4 Russ. Ch. 122; *Monk* v. *Huskinson,* 4 id. 122, note *a; Leggott* v. *Railway Co.* L. R. 5 Ch. App. 716; *Lofland* v. *Maull,* 1 Del. Ch. 359; *Riley* v. *Streetfield,* L. R. 34 Ch. Div. 388; *Tewart* v. *Lawson,* 3 Sm. & G. 307; *King* v. *Ruckman,* 24 N. J. Eq. 556.

*Third*—Where the contract provides a time for performance, with a provision for prior possession, and an express agreement for interest from a day named, and the vendor merely neglects or is unable to perform, in such case the vendee shall have the rents and profits and pay interest from the time fixed by the contract.   *Birch* v. *Joy,* 3 H. L. Cas. 565; *Brockenbrough* v. *Blythe,* 3 Leigh, 676; *McKay* v. *Melvin,* 1 Ired. Eq. 73; *Baxter* v. *Brand,* 6 Dana, (Ky.) 296; *Cowper* v. *Bakewell,* 13 Beav. 421.

The case now under discussion is somewhat anomalous. By the terms of the leasing and contract, as we· have construed them, there were reciprocal rights and interests and duties growing out of both the lease and the agreement. The lessor derived a benefit by having the lessee enter into the lease at the earliest moment. It is apparent that to induce the lessee to do so the lessor was ready and willing to sell the two tracts of land and deliver possession at once, as it could not immediately release the mortgages, align its tracks, build its viaduct, etc. Switch yards, freight grounds and buildings being necessary to the vendee, when it could thus acquire them it could derive a benefit from the lease. Each was thus mutually benefited, and with the execution of the lease the liability for compensation at $100,000 per annum was incurred by the vendee. The vendor was thus benefited. It is a reasonable construction to say that this entered into consideration and was regarded when the agreement was made which provided for the delivery of possession to the vendee and was silent as to interest. The delay in the execution of the deed was the fault of the vendor. When it had complied with all the conditions except the execution of the deed, it then sought to incorporate in the deed a condition of defeasance unauthorized by the agreement. The delay was a willful, wrongful default, and was brought about by the vendor's act alone.

It is insisted that even if such is the case, the vendee in possession is liable for interest unless the money was tendered, retained, and held dead in the hands of the vendee, and the vendor was notified thereof. To avoid the payment of interest after tender the debtor must tender the amount due and keep that money ready at all times, to pay it to the creditor if he should conclude to receive it. The debtor cannot use it and then escape the payment of interest. And the purchaser must, in general, give notice that the money is lying dead, and must actually appropriate it for the payment of the particu-

lar debt.  These principles are declared by the great weight of authority.  In the case here the money was tendered and the deed demanded.  The bill for specific performance was filed and an offer and willingness to pay averred.  To that bill the answer refusing to make a deed without its containing a condition of defeasance stands as a constant refusal to receive.

From this record these general facts stand prominently forward:  The contract gave the vendee possession and placed on the vendor certain duties which were conditions precedent to its right to receive the purchase money.  It did not contain any provision for the payment of interest.  Mutual advantage resulted from an immediate possession.  The delay in completing the sale was due solely to the willful and excuseless conduct of the vendor.  The vendor acted not merely negligently, but needlessly and willfully and wrongfully refused to perform its contract.

It may well be that where the vendor is unable to perform his contract at the time he agreed to convey, and is prevented by circumstances not under his control, or that by mere negligence he fails to convey at the time, equity may require interest to be paid.  A very different question is presented where the vendee is desirous of having a compliance by the vendor, and the vendor is able but wrongfully and willfully refuses to comply with his contract.  In the latter case he is in no position to appeal to equitable rules by which he may be benefited.  Under these circumstances we are of opinion the court erred in entering its decree requiring the vendee to pay interest prior to the entering of the decree.

The decree of the circuit court of Cook county and the judgment of the Appellate Court for the First District are each reversed, and the cause is remanded to the circuit court of Cook county, with directions to enter a decree requiring the vendor to execute and deliver a deed in fee simple absolute, in accordance with the terms of the

contract, by a short day to be named, and on its refusal so to do the master in chancery to execute such deed, the deed to be delivered on the payment of the purchase price of $197,449.60, the amount found in the original decree as the sum of the purchase price, with interest from July 29, 1893,—the date of entering the decree appealed from.

*Reversed and remanded.*