## John J. O'Heron and T. Frank Quilty, Appellees, v. American Bridge Company of New York, Appellant.

## Gen. No. 17,490.

1. CONTRACTS—*provisions in a building contract.* Where plaintiff contracted with defendant to erect a building on or before a certain time, the material to be furnished by defendant at stated intervals, a provision making an exception where an extension is granted by defendant in writing, "because of failure on part of owner to complete necessary foundations in time" or "because of failure on part of the Company to deliver the fitted steel work as before stated," and another provision that defendant should not be liable for damages or additional compensation in case it suspended operations, but would grant plaintiff additional time, are construed to be for the avoidance of a penalty, and do not prevent plaintiff from recovering on a *quantum meruit* for the value of his services where defendant caused unreasonable delay in the delivery of material.

2. EVIDENCE—*where account book made from "time slips" is admissible.* In an action for services rendered on a building, it is proper to admit an account book made by plaintiff's bookkeeper from "time slips" and various other memoranda turned in to him in the regular course of business.

3. INTEREST—*where error to allow.* In an action for value of services rendered on a building, it is error to allow interest where the amount due plaintiff depends largely upon the construction of the terms of the contract and upon questions of fact about which there might reasonably be a difference of opinion.

4. APPEALS AND ERRORS—*where interest improperly allowed is reversible error.* Where interest is improperly allowed and the amount included in the verdict cannot be ascertained to be corrected by remittitur, there is reversible error.

5. INSTRUCTIONS — *quantum meruit where there is supplemental agreement.* Where plaintiff, ignoring the contract, brings an action in *quantum meruit* to recover for value of services in erecting a building, and there is evidence of a supplemental agreement for defendant to pay plaintiff a certain additional amount per ton for sorting material in the yard instead of at the building site, as provided by the contract, it is reversible error to instruct the jury that if there has been a breach of the contract, plaintiff may recover a fair and reasonable compensation for any additional labor made necessary thereby.

6. CONTRACTS—*when action in quantum meruit does not abrogate all terms of the contract.* Where plaintiff, ignoring a building contract, sues in *quantum meruit* for value of services rendered, and there is evidence that the parties met when the work was nearing completion and agreed that the terms of the contract providing defendant should have free use of plaintiff's plant in the completion of the work should control, it is error to admit testimony as to rental value and to refuse defendant's instruction that plaintiff could not recover for use of plant during such time.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed December 19, 1912. Rehearing allowed January 2, 1913. Opinion refiled on rehearing, February 13, 1913.

KNAPP & CAMPBELL, for appellant; KEMPER K. KNAPP and WILLIAM BEYE, of counsel.

QUIN O'BRIEN, ALANSON C. NOBLE and O. A. ARNSTON, for appellees.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal from a judgment rendered against the American Bridge Company of New York, hereinafter called defendant, in an action of *assumpsit* brought by John J. O'Heron and T. Frank Quilty, copartners as John J. O'Heron & Company, hereinafter called plaintiff.

Plaintiff's declaration claimed damages for alleged breaches of a contract, and also claimed under the common counts. In December, 1904, the defendant entered into a contract with the Louisville & Nashville Railroad Company for the erection of the steel work of a ten-story office building in Louisville, Kentucky. This work was sublet by defendant to plaintiff under a contract dated May 24, 1905, which contract is the foundation of the controversy before us. Under this contract the defendant was to furnish and deliver to the site of the work all of the structural steel required.

Plaintiff claims that the actual manner and times of deliveries of this material were so different from those contemplated by the contract as to make it impossible to trace the contract in the course of the work. Hence it is claimed that plaintiff, ignoring the contract price, may recover upon its *quantum meruit* count for the reasonable value of the services rendered. The fact of delays in the delivery of material is conceded by the defendant, but it is contended that such delays were contemplated and provided for by certain provisions of the contract, which are as follows:

"The contractor agrees:

"To entirely complete work on or before August 10, 1905, except for such extension of time as will be granted in writing by the Company (defendant) (a) because of failure on part of owner to complete necessary foundations in time; (b) because of failure on part of the Company to deliver the fitted steel work as before stated."

"That the Company shall retain the right to suspend operations under this agreement without becoming liable to him (plaintiff) for any claims for damages or additional compensation but in case of such suspension the Company will grant to him additional time to carry out this agreement equal to the time operations are suspended."

These terms of the contract are said to provide that failure to deliver at the times provided for in the contract results only in an extension, by so much, of the time for the completion of plaintiff's work.

There are several considerations which lead us to the conclusion that this construction does not control: (1) Any extension of the time limit for the completion of plaintiff's work was to be "in writing," and no formal extension "in writing" was made. (2) We are inclined to hold that the provision for the extension of time was for the avoidance of a penalty the plaintiff might incur if it did not complete its work on time, and not as a privilege to the defendant to disregard its obligation for deliveries of materials (Nelson v. Pickwick

Associated Co., 30 Ill. App. 333). (3) The contract undertook not only to regulate the time but also the order of deliveries of materials. This provision is that the defendant agrees "to ship the finished structural steel required in complete shipments of two floors, with necessary supporting columns each in manner as follows: First shipment June 16th; second shipment June 23rd; third shipment June 29th; fourth shipment July 6th; fifth shipment July 13th." It is obviously reasonable to provide that shipments of the many pieces of steel should be in some orderly relation to the course of erection of the structure. The construction contended for by the defendant would permit defendant to ship materials in the most extreme, chaotic tangle possible,—a condition which might occupy more of the time of plaintiff in disentangling than would be occupied in the actual work of construction,— and the only recompense to plaintiff for this extra work would be relief from a penalty for failure to complete the work on time. We cannot give assent to this construction of the contract.

The claim of plaintiff was that the defendant so violated its obligation not only with respect to the time but also the order of deliveries of materials, that it was impossible to trace the contract in this regard in the performance of the work. As we shall remand this case for reasons hereinafter indicated, we shall not narrate the testimony upon this point. However, for the guidance of counsel we are inclined to say that if the only question before us concerned the conclusion of the jury on this question of fact, upon the record before us and under proper instructions, we should not feel justified in disturbing the verdict.

It is urged that reversible error was committed by the court in permitting the introduction of certain books of account by plaintiff. We shall not detail the character of these books, but, briefly described, they were books kept by plaintiff's bookkeeper in Chicago,

into which were entered items taken from various and numerous memoranda made by many people; for example, the entry of items of "labor" came from hundreds of "time slips," each slip signed by a laborer, upon which were the "O. Ks." of the foremen and superintendents. These time slips were produced in court and tendered, together with the books of account, to counsel for defendant for inspection. No claim is made that the account appearing in the books is incorrect. Under such circumstances the court was justified in following the conclusion reached by the learned author, as stated in Wigmore on Evidence, vol. 2, section 1530: "Where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so."

It is urged that the court erred in permitting the jury to allow interest to the plaintiff. The court refused the request of the defendant to instruct the jury that interest should not be allowed, and at the instance of the plaintiff gave an instruction touching the allowance of interest, substantially in the language of the statute. The only ground upon which plaintiff could recover interest was that there had been unreasonable and vexatious delay in payment; but there is no evidence in the record of such delay. The amount due plaintiff depended largely upon the construction of the terms of the contract, and upon certain questions of fact and of opinion, upon all of which men might disagree without being unreasonable. Furthermore, this dispute arose from an honest and genuine difference of opinion, and delay in payment arising from such a cause is not unreasonable within the meaning of the statute. "To authorize a recovery for interest the

debtor must in some way throw obstacles in the way of collection, by some circumvention, contrivance or management of his own, which induces the court to withhold proceedings against him longer than it would otherwise have done." Imperial Hotel Co. v. Claflin Co., 175 Ill. 119, 124. Moreover, plaintiff claimed $30,000 from defendant; the jury allowed plaintiff $19,500. Therefore, refusal by defendant to pay plaintiff's demand could hardly be called unreasonable. If this court could ascertain the amount of interest included in the verdict, such error could be corrected by a remittitur of this amount; but this is impossible to determine in this instance. The refusal to give the instruction requested by the defendant, and the giving of the instruction tendered by plaintiff, under the circumstances constituted reversible error.

It was also reversible error to give plaintiff's instruction No. 10. Defendant had introduced some testimony tending to prove a supplemental agreement for defendant to pay plaintiff a certain additional amount per ton for the extra labor imposed upon plaintiff in separating, sorting and classifying shipments of material in a yard instead of at the building site, as provided by the contract. Instruction No. 10 in substance told the jury that if there had been a breach of the contract the plaintiff might recover a fair and reasonable compensation for any additional labor made necessary thereby. This ignored the testimony touching any agreement between the parties as to the amount to be paid for such additional labor, and the instruction should not have been given.

We also hold that there can be no recovery for the use of plaintiff's plant subsequent to November 6, 1905. The contract contained a specific provision that if the plaintiff should fail to prosecute the work the defendant might take possession of the premises and all materials, tools and appliances thereon and complete the work. Shortly before November 6th a strike

O'Heron et al. v. American Bridge Co., 177 Ill. App. 405.

was declared which included this work and made it impossible for the plaintiff to finish it. Thereupon representatives of each party met, and it was agreed to turn over the tools and plant to the defendant, which thereupon proceeded to complete the work. The testimony of the representative of the plaintiff on this point shows that the plant was turned over rent free, in pursuance of the provisions of the contract in this regard. The defendant asked the court to give the following instruction in relation to this matter:

"The jury are instructed that the contract gave to the defendant the right to use the plant of plaintiffs subsequent to November 6, 1905, to complete the work, and plaintiffs cannot recover in this case for such use."

But the court refused to give this instruction and permitted testimony in regard to the rental value of the plant to be considered by the jury in determining its verdict. We think this was clearly error. While the terms of the contract with reference to the time and manner of deliveries of material might not be traced in the performance of the work, still it does not necessarily follow that the entire contract is abrogated, especially where the parties met when the work was nearing completion and agreed that the terms of the contract with reference to the use of plaintiff's plant in the completion of the work should control.

For the reasons above indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*