F. Foster Ladd, Appellant, v. Cochran & McCluer Company, Appellee.

Gen. No. 37,300.

O'CONNOR, J., specially concurring.

428

GARDNER, FOOTE, MORROW & MERRICK, for appellant; ROBERT L. ELLIOTT, JR., of counsel.

KIRKLAND, FLEMING, GREEN & MARTIN, for appellee; VERNON M. WELSH, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff appeals from an adverse judgment entered by the court upon the trial of an action brought by him to recover the par value of two $1,000 bonds which he bought from defendant under its agreement to repurchase them.

Plaintiff asserts that defendant refuses to carry out this agreement. Upon the trial, at the close of plaintiff's case, on motion of defendant, the court found the issues for the defendant and entered judgment accordingly. The question is presented whether plaintiff complied with the conditions of the agreement so as to impose upon the defendant the obligation to repurchase the bonds.

In March, 1930, plaintiff, who lives in Massachusetts, received from the defendant, in the business of selling real estate bonds in Chicago, a printed circular advertising for sale an issue of Edgewater Manor First Mortgage bonds; plaintiff offered to take two bonds of $1,000 in the series first maturing; defendant replied that all the short maturities were sold, but offered to sell plaintiff longer term bonds, to be accompanied by an agreement of defendant to repurchase them; plaintiff accepted this offer and paid defendant for the bonds, maturing August 15, 1937, which

were delivered to him together with the repurchase agreement signed by the defendant. The pertinent part of this agreement reads, ". . . we hereby agree that at anytime in or after the month of August, 1932, up to the final maturity of said Edgewater Manor bonds we will redeem them, upon five days' written notice, at par and accrued interest to date of transaction."

Complying with this provision for written notice, plaintiff, on August 1, 1932, mailed to defendant a letter saying that, acting in accordance with the terms of the repurchase agreement, he had drawn a draft on it for $2,065, payable August 15th, which he was forwarding with the two bonds which he had purchased; plaintiff mailed the letter by registered mail in an envelope properly addressed to the defendant, postage prepaid, with a request for a registry return receipt; August 5th he received by mail a registry return receipt signed by defendant acknowledging receipt, on August 3rd, of the registered letter.

August 1st, as plaintiff stated in his letter, he drew a draft on defendant in the sum of $2,065, the par value of the bonds, with interest, payable August 15, 1932, and gave it for collection, with the two bonds, to The First National Bank of Boston, which sent them to its correspondent bank in Chicago, the Continental Illinois National Bank and Trust Company.

Ralph Ash testified that he was a clerk in the office of the Continental Bank in the department handling drafts and the collection of drafts with securities and documents attached; the witness remembered receiving the draft and bonds in question and says they were presented to defendant on August 3rd, 15th and 19th, and each time defendant refused to pay the draft and to take the bonds; that about August 25th he called defendant's cashier on the telephone and was told by him that defendant would not pay the draft

or take the bonds, and told the witness to return the draft and bonds to plaintiff; that he then returned them to the Boston bank.

On cross-examination Ash said that the presentations of the draft and bonds were made by a bank messenger, who made a written report each time, which report was handed to him; the witness said that the reports made by the messengers are on little slips which are not kept any length of time; the witness could not recall which messenger made these reports. On motion of defendant the court struck out all the "hearsay evidence" of the witness,—evidently meaning the evidence as to the reports made by the bank messengers.

Robert L. Elliott, connected with the plaintiff's attorneys, testified that on September 13th he wrote to defendant, requesting it to comply with the repurchase agreement and offering to deliver the bonds to defendant, but no answer was received; that September 28th he called at defendant's offices and made a similar request and offer to the vice president of the defendant company, but these were refused, the vice president saying that defendant was not honoring these repurchase agreements, and referred Elliott to its attorneys; subsequently, on two occasions Elliott communicated with defendant's attorneys, requesting that defendant repurchase the bonds as it had agreed, but was refused; on the trial plaintiff again tendered the bonds to defendant, which was refused; plaintiff offered to deposit the bonds with the court so that the court could deliver them to the defendant in the event that judgment was entered for plaintiff.

We are of the opinion that plaintiff made out a prima facie case and that the court erroneously allowed the motion to find for the defendant. The proof sufficiently showed that defendant received the letter sent on August 1st by registered mail, thus the prerequisite

written notice was observed. Not only did plaintiff's testimony as to mailing the letter raise a presumption of its receipt by defendant (*Cooke v. Industrial Commission,* 340 Ill. 309; *Keogh v. Peck,* 316 Ill. 318), but the return receipt signed by it is prima facie evidence that it received the letter on the date of the receipt. United States Revised Statutes, sec. 3928, as amended —U. S. Code Annotated, Title 39, sec. 386, 1933 Cumulative Pocket Part. We do not seriously view the argument that the envelope in which the letter was sent may have been empty when it was received. The evidence of plaintiff that he enclosed the letter in the envelope and the presumption that it remained there, rebut any such argument.

Cases cited by defendant are not in point. For the most part they have to do with the question whether notice was given in time, the parties receiving the notice claiming that it was received too late to comply with certain contracts.

There was abundant evidence that defendant refused to repurchase the bonds. It so stated to Ash and to Elliott. Also, the tender made upon the trial was refused. When it is shown that a tender would be useless or unavailing it is unnecessary to make it, even if it were a condition precedent. *Kincaid v. Overshiner,* 171 Ill. App. 37; *Osgood v. Skinner,* 211 Ill. 229.

Where the agreement requires the acts of both parties to be done at the same time, one is not obliged to perform his part before the other. *Manistee Lumber Co. v. Union Nat. Bank of Chicago,* 143 Ill. 490. Under these conditions the word "tender" means only a readiness, willingness and ability on the part of one of the parties to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required to perform. *Clark v. Weis,* 87 Ill. 438.

The court erred in striking out, as hearsay, the testimony of Ash as to the reports made by the bank messengers. He testified that in the regular course of business bank messengers presented the draft and bonds to defendant and made written reports of the results of these presentations, which reports were given to the witness. In *O'Heron v. American Bridge Co.*, 177 Ill. App. 405, it was held that the books of account of one of the parties were admissible in evidence, where the items entered were taken from various and numerous memoranda of other persons, although those other persons were not produced as witnesses. Many other cases have so held. *Chicago & N. W. Ry. Co. v. Ingersoll*, 65 Ill. 399; *Chisholm v. Beaman Machine Co.*, 160 Ill. 101. In *International & C. N. R. Co. v. Startz*, 42 Tex. Civ. App. 85, it was definitely held, after an exhaustive consideration, that a witness not a party to the suit might testify from records kept by him in the regular course of business even though those records were based on reports made to him in the regular course of business by persons not produced at the trial as witnesses. The cases cited by defendant to support the ruling of the court in striking the testimony only state the general rule that hearsay evidence is incompetent. They are not concerned with a situation like that presented in the instant case, where the reports were made by the messenger in the regular course of business and the witness is not a party to the suit.

For the reasons indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

MATCHETT, P. J., concurs.

MR. JUSTICE O'CONNOR specially concurring: I agree with the conclusion reached in the foregoing opinion and with what is said in it, except that it does not go far enough.

It had been thought that the day of deciding law suits on quibbles had passed. But it seems the thought is often based on the hope and not on the reality. It often happens under our archaic way of trying cases that everyone who has anything to do with a lawsuit —lawyers, witnesses, even spectators—is familiar with the facts, and that the only one who does not know them is the judge, because the evidence, as the late Judge Gary said, "is not visible to the judicial eye."

In the instant case the evidence not only made out a prima facie case, as the opinion of the court holds, but made out a very strong case for the plaintiff. It is to be hoped that hereafter most, if not all, of the facts will be adduced before the actual trial begins, pursuant to section 58, and other sections of the new Practice Act in connection with Rules 17, 18 and 19, adopted by our Supreme Court, so that there will be fewer appeals and reversals for failure to bring out the facts.

Moreover, I think the rule barring what is termed "hearsay evidence" ought to be greatly relaxed if not entirely abolished in civil cases. What would be designated hearsay evidence and excluded in court is acted upon in business transactions constantly. If business could not be carried on by what is said and done in the nature of hearsay evidence, practically all business would stop at once. It ought to be assumed that if such evidence were admitted in court, the judge and jury would take that fact into consideration in determining the truth of the point in controversy.