**West Suburban Finance & Thrift Company, Appellant,
v. Harry H. Herbst, Appellee.**

**Gen. No. 40,493.**

Opinion filed May 2, 1939. Rehearing denied May 20, 1939.

MAX MURDOCK, of Chicago, for appellant.

WM. H. FISCHER, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

In an action at law for breach of defendant's written contract to purchase certain accounts from plaintiff, the court directed a verdict and entered judgment for defendant. Plaintiff appeals.

The essential facts disclose that Butterfield Memorial Park (formerly Butterfield Cemetery Company), a corporation for profit, was engaged in the business of selling cemetery lots on instalment payments. The defendant, Harry H. Herbst, has been president of the corporation for some six or seven years. Prior to his incumbency the cemetery company had discounted with plaintiff a number of these instalment accounts in a series of transactions evidenced by

written assignments, which are referred to by the parties herein as "Notes." These notes are on printed forms, similar in all respects except as to the dates, amounts and lists of account, and it is stipulated in each note that upon default in the payment of any instalment when due, the cemetery company shall become obligated to pay the entire balance; that the accounts shall remain in the hands of the cemetery company for the purpose of collection; that remittance of payments shall be made to plaintiff; and that the cemetery company may repossess and resell lots on which customers have defaulted. All these accounts have been in default since 1931. April 15 of that year Herbst, being then a large stockholder and an officer of the cemetery company, purchased fifteen of these notes from plaintiff, under a written contract which is the subject of this suit. He agreed to pay the purchase price in stipulated instalments and against this price he was to be credited with any payments thereafter received on the accounts. As collateral security for his undertaking, he deposited certain bonds with plaintiff, which were sold by plaintiff December 31, 1937, after Herbst's default, for $500, and that amount was credited on the purchase price. The agreement provided that the sale of collateral might be made without notice to defendant; nevertheless, plaintiff served formal notice on him of the time and place of the sale, but he did not appear, bid, or make any effort to procure a bidder. Subsequently, January 11, 1938, plaintiff made a formal tender in writing to defendant of the indebtedness, notes, documents and papers described in the contract, advised him of the sale of the collateral, credited him with the proceeds of the sale, and demanded payment of the balance on the contract. Defendant refused to accept or examine the papers tendered, and refused to pay the amount claimed to be due. Thereafter, January 17, 1938, plaintiff instituted

suit and after personal service on Herbst and his default, judgment was entered in favor of plaintiff on February 28, 1938, for $18,203.77 and costs. March 29, 1938, defendant moved to vacate the judgment, admitting the contract and his refusal to pay the remainder of the purchase price alleged to be due, and setting forth as the reason for his refusal, the verbal cancelation of the contract by mutual agreement, thus claiming to have been released from any obligation to pay the balance of the purchase price for the notes and securities mentioned in the agreement. Upon the filing of defendant's answer setting forth this defense, the court entered an order opening the judgment, but allowing it to stand as security. No question is raised by defendant as to the amount of the judgment, and he concedes that he never made any payments on account of his undertaking. Neither does he question plaintiff's figures as to the amounts credited to him on the various notes purchased. Trial of the issues was had by jury. On the day of the hearing defendant filed a counterclaim, on the theory that plaintiff and its officers were liable to him for selling, for less than their alleged value, the bonds which he had pledged as collateral. This counterclaim was traversed by a counter-answer, filed by plaintiff instanter. No evidence was offered on the counterclaim and the court accordingly dismissed it. At the close of plaintiff's case defendant's motion for a directed verdict was overruled, but at the close of all the evidence a similar motion made by defendant was allowed, for the sole reason, as stated by the court, that plaintiff failed to prove tender to defendant of the entire subject matter of his purchase contract.

The principal question argued by the parties in their briefs is whether an adequate tender was made by plaintiff and proved upon the hearing. Before discussing the evidence bearing upon this question, it

seems pertinent to observe that this issue was not raised as a defense in the answer filed by defendant; he relied solely on the alleged oral cancelation of the agreement; but upon the hearing he abandoned this defense and embraced the theory of inadequate tender. It is undisputed that when plaintiff made a formal tender in writing in January, 1938, of the indebtedness, notes, documents and papers described in the contract, and advised defendant of the sale of the collateral, defendant refused to accept the tender, giving as his reason the alleged cancelation of his contract, and when suit was instituted against him he interposed the alleged cancelation of the contract as his sole defense. Under the circumstances, we feel that we would be justified in disposing of this appeal on the ground that defendant thereby waived all other defenses, including the sufficiency of the tender. (*National Importing & Trading Co. v. Bear & Co.*, 236 Ill. App. 426, 441.) It has been generally held that when a tender would be useless or unavailing, it is unnecessary to make it even if it were a condition precedent. (*Ladd v. Cochran & McCluer Co.*, 274 Ill. App. 427; *Osgood v. Skinner,* 211 Ill. 229.) Under this well-established legal principle, the question of an adequate tender becomes one of secondary importance, especially in view of the position taken by defendant and the reason assigned by him for refusing to carry out his agreement, namely, that it had been canceled by mutual oral agreement of the parties.

However, in view of the fact that the cause was tried on the sole issue whether an adequate tender was made we have carefully examined the record and have reached the conclusion that plaintiff did make an adequate tender, both before the suit and at the trial, of all the notes listed in the contract as the subject matter of the sale, and that the supposed deficiency in the tender relates only to some of the lot instalment con-

tracts which were collateral security for those notes. The evidence discloses that the cemetery company considered some of the instalment contracts worthless and procured their return, stating its purpose to cancel them and resell the lots. The court was evidently of opinion, however, that the tender was not adequate without the inclusion of all the collateral in its original form, and that redelivery to the cemetery company, of some of the contracts, placed plaintiff in the position of not being able to deliver what plaintiff had contracted to sell and deliver to defendant. In this connection, the undisputed evidence discloses that defendant requested plaintiff to surrender those defaulted instalment contracts to the cemetery company and authorized its secretary to obtain them from plaintiff. J. F. Van Devanter, plaintiff's secretary, testified to this effect, and there is no denial thereof. The court was also of the opinion that it was the plaintiff who had decided upon the redelivery, assuming to act for Herbst's benefit. This is indicated in the oral opinion of the court in the following language:

"Now your idea of what was the best thing for Mr. Herbst might not be Mr. Herbst's idea of what the best thing would be for him. If he bought white horses he is entitled to white horses, whether you think black horses would be better for him or not; and I think he was entitled to get what he bought here under this contract, which were these specific notes, together with all of the security that secured them, whatever they were: deeds, contracts or anything else that went along with it." In this conclusion the court evidently overlooked the undisputed fact that it was Herbst, himself, who had decided upon that course and who directed plaintiff to redeliver the contracts.

When the whole transaction is carefully analyzed nothing appears therein to warrant the conclusion that the lot contracts mentioned by the court were sold to

Herbst; it was the indebtedness of the cemetery company to plaintiff which Herbst agreed to purchase and nothing else; the lot contracts were merely incidental as collateral security to that indebtedness. Plaintiff's counsel aptly points out that the real value in these notes lay in the prospects of collecting the instalments from willing purchasers, not in foreclosing on the doubtful value of cemetery lots. The notes themselves made provisions for cancelation of defaulted instalment contracts and for resale, and therefore it was to Herbst's interest, as well as that of the cemetery company, to return the lot contracts which were in default. Herbst undoubtedly had the right to request plaintiff to return the lot contracts which were in default and in so doing he waived his right to this particular collateral (*Evans v. Howell,* 211 Ill. 85) and rendered it unnecessary for plaintiff to tender the return thereof.

As applicable to the question of inadequate tender, the record discloses that all of the original notes which defendant had agreed to purchase were produced at the trial, introduced in evidence, and tendered in open court to the defendant. That they were also tendered to him before suit is not denied. Along with these notes, plaintiff also tendered on both occasions all the collateral documents except those whose absence was explained as due to defendant's own act, namely, his direction for redelivery of certain contracts to the cemetery company, of which he was president. This, it seems to us, fulfilled every legal obligation that plaintiff owed defendant, and since the execution of the contract, default, and all other facts underlying plaintiff's right to a judgment are undisputed, we see no reason why the original judgment entered against defendant should not be enforced. It was not set aside under the court's order, but was merely allowed to stand as security. Since defendant admits the terms of the contract which fixed the purchase price, admits that

he made no payments other than those credited to him by plaintiff, and in all respects approves plaintiff's computation of the amount due, there was nothing left for the jury to decide. Therefore, the judgment or order of the circuit court of July 15, 1938, is reversed without remanding the cause for a new trial and judgment is entered here confirming the judgment of said court of February 28, 1938.

*Judgment of July 15, 1938, reversed and judgment here confirming judgment of February 28, 1938.*

SCANLAN, P. J., and JOHN J. SULLIVAN, J., concur.