*In re* ESTATE OF LILAH J. KROTZSCH, Deceased.—(STELLA M. PARSELL, Ex'r of the Will of Lilah J. Krotzsch, Petitioner-Appellee, *v.* JOSEPH R. KRAMER *et al.*, Respondents-Appellants.)

Fourth District   No. 13880

Opinion filed May 2, 1977.

Suddes, Davis & Wittman, of Jerseyville (George P. Wittman, of counsel), for appellants.

Earl R. Bice and Daniel Greer, both of Springfield, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

On April 7, 1966, Lilah Krotzsch, the seller, entered into a contract with Joseph and Mildred Kramer, the buyers, to sell 240 acres of Jersey County real estate. The contract called for a total price of $156,000: $28,000 payable at the time of contracting with $10,000 due on April 1, 1967, 1968, 1969, 1970, and the balance due April 1, 1971, with interest at five percent. The Kramers have had possession of the land since the signing of the contract.

The contract provided that the seller would provide the buyers with an abstract showing merchantable title and that if defects appeared, the seller reserved the right to furnish a title guaranty policy. In addition, the contract stated: "That should the seller be deceased before final payment is made hereunder, then and in that event such final payment shall be made to Stella Parsell, sister of the seller, if she be living, otherwise to my estate."

Lilah Krotzsch died and her will was admitted to probate January 30, 1969. Stella Parsell was executrix of the estate. At the time of the seller's death, the unpaid balance on the contract was $119,738 with interest from April 1, 1968. The Kramers made payments of $10,000 on April 1, 1969, and April 1, 1970, leaving a balance due on the principal of $111,511.15 and $5,575.56 interest due on April 1, 1971.

On May 3, 1971, the attorney for the Kramers informed the Krotzsch estate that the money was available to pay the balance due on the contract when certain procedures were followed and deeds from the executrix and all of decedent's heirs (Stella Parsell, a niece, and two nephews) were tendered.

On November 22, 1971, the trial court in response to her petition ordered the executrix to convey the land to the Kramers and to distribute the proceeds to Stella Parsell, individually, under the terms of the will. The niece and nephews appealed from that order to this court. (*In re Estate of Krotzsch* (1974), 18 Ill. App. 3d 556, 310 N.E.2d 33.) Appeal was then taken to the Illinois Supreme Court (60 Ill. 2d 342, 326 N.E.2d 758) where the trial court's order was affirmed on March 24, 1975.

In May 1974, while the case was on appeal, the executrix attempted to

obtain an order from the trial court requiring the Kramers to pay the balance in full. The court refused to enter such an order because it felt that while the matter was still on appeal it did not have jurisdiction. It also had before it a petition to remove the executrix.

On December 10, 1971, an abstract was sent to the Kramers. Their attorney raised certain objections to title. It is agreed by the estate that the abstract of December 1971 did not show the current account of the estate which had been filed in Sangamon County by the executrix on January 29, 1971. When the executrix demanded final payment, the Kramers refused, since they felt that the Jersey County records and abstract were not sufficient to show merchantable title. On June 9, 1975, the Kramers' attorney approved title because copies of the Sangamon County records had since been recorded in Jersey County. The record does not state what those documents were. The Kramers claimed nonliability for interest from April 1, 1971, since the abstract was not deemed merchantable by them. The balance due on the contract, except for the disputed interest, was paid July 23, 1975. This was four months after the supreme court's opinion had been filed.

This action was filed by the executrix for interest on the principal balance due April 1, 1971, through July 23, 1975. The trial court awarded the estate interest at the rate of five percent in the amount of $24,052.36. No finding was made by the trial court as to the merchantability of title and in lieu of the report of proceedings the parties stipulated to a statement of facts for purposes of appeal.

The issue on appeal is whether or not the buyers are indebted to the seller's estate for interest on the principal balance from April 1, 1971, the date it was due, to July 23, 1975, the date of payment. The Kramers maintain that they tendered performance on May 3, 1971, when their attorney informed the Krotzsch estate that money was available to pay the balance due.

■■ While there is some authority for the proposition that a tender properly made and kept is a complete defense to any claim for interest (see *Glos v. Ambler* (1905), 218 Ill. 269, 75 N.E. 764; *East St. Louis & Interurban Water Co. v. City of Belleville* (1935), 360 Ill. 490, 196 N.E. 442; *City of Chicago v. Chicago City Ry. Co.* (1927), 245 Ill. App. 473), here we do not even have a valid tender. A valid tender requires readiness, willingness, and ability to perform as required by the agreement. (*Ladd v. Cochran & McCluer Co.* (1934), 274 Ill. App. 427.) The trial court here made no finding that the buyers had made a valid tender and the only evidence which might tend to show that they had is the letter by their attorney to the estate informing it that the money was available to pay off the balance. While it remains very questionable whether this letter alone establishes a tender, even assuming it does, the

buyers have not established that they kept their tender open. The record fails to disclose that the Kramers deposited the balance due with the court or in any way segregated the funds so as to be deprived of their use. It is not established whether the Kramers had borrowed the approximately $117,086.71 necessary to pay off the contract. Assuming they had actually consummated a loan prior to their "tender," we cannot assume that they were deprived of the benefit of its use from May 3, 1971, to July 23, 1975. The stipulation, which makes up the record on appeal, does not indicate that the buyers were deprived of the use of the money for the four-year period. They cannot avoid the payment of interest under the requirements set out in *Thayer v. Meeker* (1877), 86 Ill. 470, 474, which held that the buyer

> " * * * must tender the exact amount due, and he must keep that money ready at all times to pay it to the creditor if he should conclude to receive it and demand its payment. He can not use it, make profit from its use, and then escape the payment of interest when he comes to force the creditor to receive it. The debtor escapes payment of interest upon the supposition that the money should have been received by the creditor, and that the debtor has set it apart for him, and has been thus deprived of its use and prevented from making profit on it. There is no evidence that this money thus tendered has been so held and not used; and, in the absence of such proof, it was error to decree the payment of the money without including interest on the notes until the time of the rendition of the decree."

This was reiterated later by the supreme court in *Cottrell v. Gerson* (1939), 371 Ill. 174, 181, 20 N.E.2d 74, 79, where it stated, "A tender must be kept good by bringing the money into court."

■■ Irrespective of whether the buyers here made a valid, continuing tender, it must be noted that as of November 22, 1971, when the trial court ordered the executrix to execute a deed conveying the property to the Kramers, the title was clearly merchantable. The appeals to this court and the supreme court which followed did not contest the portion of the trial court's order granting leave to the executrix to convey the property to the Kramers. The niece and nephews pursued the appeals, only contesting the distribution of the proceeds from the sale of the land. Given a valid, unappealed court order directing the executrix to execute a deed to the land to the Kramers, the title was then merchantable. The buyers' other objections to the title are not sufficient to cast doubt on its merchantability.

■■ Moreover, equity requires that the buyer not be permitted to have use of the land and the purchase money. In *Rankin v. Rankin* (1905), 216 Ill. 132, 74 N.E. 763, the facts were somewhat analogous to the present

case. The contract buyer was in possession of the land during litigation which he later won. The court ordered the seller to convey the land to the buyer but awarded the seller interest for the period between the tender of the purchase price (which was refused by the seller) and the date of the judgment, since the buyer had use of both the land and the money during that time. The cases of *Bear v. Fletcher* (1911), 252 Ill. 206, 96 N.E. 997, and *Atchison, Topeka & Santa Fe R.R. Co. v. Chicago & Western Indiana R.R. Co.* (1896), 162 Ill. 632, 44 N.E. 823, like *Rankin,* both discuss the inequity in allowing one party to have use of both the land and the purchase money.

In the *Atchison, Topeka & Santa Fe case,* the supreme court said:

> "[I]f the vendor cannot make title at the time appointed for the payment of the purchase money, and the vendee retains possession, he must pay interest as a compensation for the profits he is receiving during the vendor's inability to make title. It would be grossly inequitable that the vendee should hold both the land and money and compensate for neither." 162 Ill. 632, 653, 44 N.E. 823, 829.

It seems logical to say that if a seller is entitled to interest on the purchase money when he is unable to make title, then, in the present case, the estate is even more entitled to interest since title was merchantable as of November 22, 1971, and it was the Kramers, not the executrix, who were unwilling to consummate the final transaction.

Finally, the trial court computed interest from April 1, 1971, to July 23, 1975. Because title was not merchantable until November 22, 1971, this was error and counsel for the estate agrees. The buyers were not obligated to tender payment until provided with a merchantable abstract of title. Therefore, interest should be recomputed so as to only cover the period from November 22, 1971, to July 23, 1975.

For the foregoing reasons, the decision of the circuit court of Sangamon County is affirmed in part and reversed in part and remanded to the trial court with directions to recompute the interest in accordance with the directions expressed above and to enter judgment accordingly.

Affirmed in part, reversed in part and remanded.

MILLS and HUNT, JJ., concur.