HERBERT HANSON, a/k/a Herbert N. W. Hanson, Plaintiff and
Counterdefendant-Appellee, *v.* GEORGE C. DUFFY, Defendant and
Counterplaintiff-Appellant.

Second District   No. 81-614

Opinion filed May 20, 1982.

Allan Goldberg and Glen Neuman, both of Allan Goldberg, Ltd., of Chicago, for appellant.

Leo M. Flanagan, Jr., William H. Weir, and Karen J. Johnson, all of Brittain, Ketcham, Strass, Terlizzi, Weir & Johnson, of Elgin, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Herbert Hanson filed a forcible entry and detainer action to recover possession of a commercial building and rents and damages alleged to have resulted from the holding over of the tenant George C. Duffy. Duffy answered and counterclaimed, alleging that he properly exercised an option to purchase provided in the lease, but was wrongfully prevented from completion, seeking specific performance in one count (which he withdrew before trial) and in a separate count claiming damages. In a bench trial, the trial court ruled that the parties' claims for damages offset each other, and dismissed both the complaint as amended and the counterclaim. Duffy appeals from the dismissal of his counterclaim. Hanson has not cross-appealed.

On March 8, 1973, Hanson, who had previously conducted a laundry business on the premises, leased to Union Linen Supply, a commercial laundry, which later adopted the name Libco. The lease was for a five-year term beginning on the date the tenant took possession with a rental of $1,000 per month. The tenant used some of the laundry machinery which Hanson had left on the premises. The lease contained an option to purchase the premises in accordance with an attached purchase agree-

ment for $100,000. The lease provided that if the tenant exercised the option, an amount equal to 30% of all rent paid by the tenant "up to the date of closing" shall be credited on the purchase price. Libco assigned the lease to Duffy on September 7, 1977. Both parties agree that Duffy, on September 8, 1977, properly notified Hanson that he would exercise the option to purchase. The dispute as to the option arises from Hanson's claim that the lease expired on March 8, 1978, and Duffy's claim that the lease expired on March 26, 1978; and from conflicting claims as to the nature of negotiations between the parties following notice of exercise of the option. The real estate agreement attached to the lease failed to fix a date for closing or provide for payment of interest in the interval between the termination of the lease and the closing of the real estate purchase.

At trial there was evidence of correspondence between the parties through their attorneys between March and July of 1978. It appears that by June 23, 1978, Duffy had waived all earlier objections he had to title and survey, and the parties had agreed upon a purchase price of $75,310.25 in cash, but no progress had been made toward settling the rent or interest, if any, owing from the date of expiration to closing. Hanson believed the delays were caused by Duffy's inability to procure financing and sought interest at rates varying between 8% and 9 1/4% calculated from March 8, 1978. Duffy, believing he was a vendee, refused to pay any rent; he further rejected Hanson's demands for interest, attributing the delays in closing following the end of the lease to Hanson's inability to obtain a plat of survey.

Hanson testified that he refused for tax reasons to close when Duffy exercised the option in September 1977. Early in 1978, Duffy "suggested" that payment be made in installments over 2 years; Hanson, however, preferred the contract terms which provided for payment in cash, and declined Duffy's proposal approximately one month prior to the expiration of the lease. On March 1, 1978, Hanson offered Duffy a loan at 9 1/4% "with two points," but Duffy refused to pay the two points and said he would pay in cash. He said that because Duffy was still in the process of procuring financing, the parties failed to close on March 8, 1978; the parties thereafter failed to settle on a date for closing. Hanson said that on April 30, 1978, Duffy indicated that he still did not have the cash to close. He testified further that title was free of cloud but for 1977 real estate taxes owed by Duffy, and that he was ready to perform when the lease expired but that Duffy did not then or thereafter tender the purchase balance due.

Ben Rifken, the attorney who represented Hanson during negotiations with Duffy and his attorney, testified that the parties, after various calculations, did not agree on a purchase balance of $75,310.25, after deducting an $18,000 rent credit and a security deposit, until June 20, 1978. Rifken testified that by June 5, 1978, Hanson had completed the

required survey and, in Rifken's opinion, was then able to convey good title. He said the sale failed to close after June 20 because the parties could not agree on the rent or interest, if any, owing to Hanson after termination of the lease. In mid-July Rifken and Duffy's attorney did agree to a compromise whereby the parties would place in escrow the warranty deed and unpaid purchase balance, and Hanson's claim for rent or interest would be determined in a lawsuit. The parties, however, did not agree to compromise, and Rifken on cross-examination added that his client, Hanson, in particular wanted a complete and final settlement.

Duffy testified that after conferring with Hanson about paying the balance over two years in installments, he rejected Hanson's loan offer and chose by March 11, 1978, to pay in cash. He admitted that on March 6, 1978, he did not know how much cash he had on hand but added that he intended to raise the funds for closing from selling stock holdings and bonds listed on major exchanges, in addition to the cash then available to him. More than a month later, on April 30, 1978, he applied for a $110,000 loan at the Edgewood Bank which approved his application in the amount of $85,000 on June 7 or 17, 1978. Interest on the loan was payable quarterly at the prime rate plus two percent floating monthly; Duffy testified that the loan was still good in August 1978. He testified that he was ready, willing, and able to perform on March 23, 1978, which he believed to be the date when the lease terminated. Finally, he testified that by letter of June 21, 1978, he waived all objections to title and the plat of survey, other than to Hanson's continuing demand for rent or interest.

The flurry of correspondence between the parties obscured the question as to who was in actual possession at the end of March 1978. Duffy testified that he had not been on the premises since March 1978. Hanson claimed that Duffy was the tenant. The assignor of Duffy's interest, vacated the property at the end of March 1978, and at Duffy's request sent the keys to the premises to Duffy's attorney, rather than to Hanson. Hanson testified that Union's lease began March 8, 1978. The manager of the Libco testified, however, that Union went into possession on March 26, 1973, and rental payments confirm this.

The trial judge specifically found that the termination date of the lease was March 26, 1978, that Hanson's demand for rent or interest for the intervening period was improper, that "the evidence is not clear that at any critical time * * * Duffy was ready, willing and able to perform in accordance with the contract" and that "neither party stands blameless."

I

■■ An option, when accepted and exercised according to its terms, becomes a present contract for the sale of the premises. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 297.) Upon exercise of the option the former relationship of lessor and lessee terminates and the parties occupy the

relationship of vendor and vendee. (*Cities Service Oil Co. v. Viering* (1949), 404 Ill. 538, 554.) Thereafter, the land is regarded, in equity, as the property of the vendee subject to the rights of the vendor under the contract, and the lessor is not entitled to rent thereafter unless the lease expressly so provides. (404 Ill. 538, 554-55). Where there is a failure to specify a time of performance, the law will supply a reasonable time under the circumstances, particularly where time is not made of the essence of the agreement. *Bladel v. Carroll* (1929), 336 Ill. 168, 171.

■■ The finding of the trial judge that the lease terminated on March 26, 1978, is not against the manifest weight of the evidence and will be upheld. When Duffy exercised the option on September 8, 1977, an executory contract for the sale of the premises was complete pending termination of the lease on March 26. After that time the lessor-lessee relationship ceased and the parties' rights were to be determined by the provisions of the real estate purchase contract attached to the lease. The March 26, 1978, date is a reasonable date from which performance could be considered due under the circumstances since this gave Duffy more than six months from the date of his exercise of the option to secure financing and to tender the unpaid balance.

■■ The finding of the trial court that Duffy failed to tender payment is also not against the manifest weight of the evidence, and we therefore cannot disturb it. (*Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 944-45.) While Duffy testified that he had sufficient funds available to buy the property there was contrary testimony by Hanson that Duffy told him as late as April 30, 1978, that he did not have the cash to close. It was also clear from the record up to June 7, 1978, that Duffy never went beyond the mere representation that he was ready, willing and able to perform as agreed. A notice that an option will be exercised is not, in itself, a legal tender. (*Ortman v. Kane* (1945), 389 Ill. 613, 621.) A party has the burden to prove that a tender of payment, to be the equivalent to actual production and tender of the money, is made by one who has the present ability to make the payment. (See *Bembridge v. Miller* (1963), 235 Or. 396, 404-05, 385 P.2d 172, 176.) Until Duffy obtained the loan commitment, he had not segregated any of his assets so as to be deprived of their beneficial use. (See *In re Estate of Krotzsch* (1977), 48 Ill. App. 3d 178, 181.) Once Duffy did obtain the loan commitment on June 7, it is apparent that the immediate availability of any money and Duffy's readiness to close were still conditional in that Duffy was willing and able to perform the sales contract only on his terms. A purported tender is ineffective if made on conditions which the party has no right to attach. See *Estreen v. Bluhm* (1977), 79 Wis. 2d 142, 255 N.W.2d 473, 482; see also *Sullivan v. Burke* (1958), 15 Ill. 2d 101, 113-14; *Arnold v. Leahy Home Building Co.* (1981), 95 Ill. App. 3d 501, 507.

We have considered Duffy's further argument that, in any event, his

tender was excused because Hanson was guilty of an anticipatory breach of contract when he refused to convey unless Duffy paid rent, or interest at a rate unilaterally set by Hanson and above the legal rate of interest.

■■ Initially, we reject Duffy's claim that Hanson had no right to either interest or rent after the exercise of the option effective on the termination date of the lease. Duffy's contention that Hanson's demand for interest was wrongful is against the weight of authority. Although no Illinois case is precisely in point, the equitable rule elsewhere is that under an executory sales contract the vendor is entitled to interest at the legal rate on the unpaid purchase balance from the vendee in possession, even though the vendor has failed to deliver the deed as required, unless the vendee has placed the purchase money beyond his own use, or meanwhile incurred liability for payment of interest to a prospective mortgagee. (See *Estreen v. Bluhm* (1977), 79 Wis. 2d 142, 255 N.W.2d 473, 481-82; *Kreider v. Brubaker* (1952), 371 Pa. 279, 283-84, 89 A.2d 502, 504; *Volk v. Atlantic Acceptance & Realty Co.* (1948), 142 N.J. Eq. 67, 73, 59 A.2d 387, 392. See generally Annot., 25 A.L.R.2d 951 (1952); 92 C.J.S. *Vendor & Purchaser* sec. 260(c) (1955).) The rule derives from an equitable proposition of greater application, long recognized in Illinois, that the vendee should not enjoy beneficial use of both the premises and the purchase money without compensating the vendor for either. (See *Atchison, Topeka & Santa Fe R.R. Co. v. Chicago & Western Indiana R.R. Co.* (1896), 162 Ill. 632, 653; *Rankin v. Rankin* (1905), 216 Ill. 132, 141; *Bear v. Fletcher* (1911), 252 Ill. 206, 221; *In re Estate of Krotzsch* (1977), 48 Ill. App. 3d 178, 181-82.) Accordingly, the interest accruing to the vendor is not an element of damages awarded for the vendee's default in failing to pay money when due, but is rather compensation for the vendee's use of money when the vendee in equity is trustee of the balance for the vendor. See *Farnworth v. Jensen* (1950), 117 Utah 494, 217 P.2d 571, 575; *Lund v. Larsen* (1946), 222 Minn. 438, 440-41, 24 N.W.2d 827, 828-29.

■■ Hanson wrongfully claimed interest for the period of March 8 to March 26, 1978, and further, did not establish any contractual or legal basis for charging 8-9 1/4 percent interest which he claimed was the rate charged by local banks. However, this was a partial breach, which in our view, did not amount to an anticipatory breach of the contract so as to totally excuse performance by Duffy. Whether a breach is substantial enough to discharge another's duty to perform is to be decided on "general principles based upon the inherent justice of the matter." *Leazzo v. Dunham* (1981), 95 Ill. App. 3d 847, 850. See also Restatement (Second) of Contracts sec. 241, and Comments (1981).

Here, there is no evidence that Hanson committed a total breach of the contract or that Duffy so believed. Hanson did not deny the validity

of Duffy's exercise of the option; he obtained the plat of survey, which was accepted by Duffy; he did not transfer the property or perform any other voluntary act which would make it impossible for him to perform.

No material breach was committed which would excuse Duffy's tender or performance. Hanson's demand for rent or interest was made early in the negotiations and did not prevent other performance required under the contract from going ahead; the breach arose from a situation not provided for in the contract, does not appear to have been advanced in bad faith, and involved only approximately $2,000 to $3,000 out of a $100,000 sales price. It should also be noted that Duffy had either constructive or actual possession of the premises for nearly three months rent-free while being able to draw interest or dividends on funds or stocks at his disposal. In these circumstances, we agree with the court's assessment of the justice of the matter implicit in its finding that "neither party stands blameless." The breach by Hanson was not a material breach under all the circumstances which would justify the failure of Duffy to perform. See *Eager v. Berke* (1957), 11 Ill. 2d 50, 55.

## II

■■ We also conclude that the trial court's finding that the parties' damages are completely offsetting is not against the manifest weight of the evidence. Duffy, in his counterclaim, sought damages of $100,000 for breach of the sales contract. However, the failures of both parties to perform in accordance with their agreement amounted to a waiver of the default by the other. (*Cf. Ross v. Danter Associates, Inc.* (1968), 102 Ill. App. 2d 354, 361.) Neither party can recover damages for the other party's breach of contract in the circumstances before us.

As for the claims for damages under the lease, the trial court's finding that the damages were offsetting appears to be within the range of the evidence. Duffy's claim for the return of his security deposit in the amount of $5,000 with interest on the deposit and $2,900 in roof repairs would be offset by amounts due Hanson for legal interest between the date of the expiration of the lease by its terms of March 26, 1978, and the date Hanson reentered the premises, stipulated to be October 9, 1978, unpaid property taxes for 1977, and losses or damages to machinery on the premises.

We conclude that the trial court's refusal to award damages to Duffy was not against the manifest weight of the evidence. We therefore affirm the judgment.

Affirmed.

HOPF and VAN DEUSEN, JJ., concur.