CASIO, INC., Plaintiff-Appellee,

v.

S.M. & R. CO., INC.,
Defendant-Appellant.

No. 83–3300.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1984.

Decided Jan. 17, 1985.

Narcisse A. Brown, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for defendant-appellant.

Ruben Castillo, Charles N. Brusso & Assoc., Chicago, Ill., for plaintiff-appellee.

Before BAUER and POSNER, Circuit Judges, and CAMPBELL, Senior District Judge.*

* Hon. William J. Campbell of the Northern District of Illinois, sitting by designation.

POSNER, Circuit Judge.

Casio, the U.S. distributor of watches manufactured by its Japanese parent, sued SM & R, which sells watches at retail. The suit was for $38,235, representing the unpaid balance of watches that Casio had sold and delivered to SM & R. Casio obtained judgment for that amount after a bench trial and SM & R has appealed, claiming that the watches it has not paid for are watches it was contractually entitled to return to Casio for a credit, because its customers had returned them to it. The only basis for federal jurisdiction is diversity of citizenship, and the first question we must decide is whether the parties were actually citizens of different states.

The complaint alleges (and the answer does not deny) that Casio is incorporated in New York and SM & R in Illinois, and that Casio "is a New York Corporation" and SM & R "is an Illinois Corporation," which we take to be a second reference to the states of incorporation. The pretrial order states accurately that "the jurisdiction of the [District] Court is not disputed," and the parties presented no evidence at trial explicitly directed to establishing or refuting the existence of diversity of citizenship. The district judge in his Rule 52(a) findings stated that Casio's principal place of business is in New Jersey and SM & R's in Illinois, but the complaint, answer, and pretrial order are in fact silent on the parties' principal places of business and the question was not raised at trial. SM & R challenged the district court's jurisdiction for the first time after judgment.

For purposes of the federal diversity jurisdiction, a corporation is (with an immaterial exception) a citizen both of the state (or states) in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c). Hence when one corporation sues another and the only basis of federal jurisdiction is diversity, the plaintiff must allege both the state of incorporation and the state of the

principal place of business for each corporation. See Form 2, Forms Appendix of Federal Rules of Civil Procedure; Note of Advisory Committee on the 1961 Amendment to Form 2. If the plaintiff fails to allege all these things the complaint should be dismissed. If the complaint does contain the requisite allegations showing diversity, and the answer does not deny them, and nothing comes to light before judgment becomes final (after all appeal possibilities have been exhausted) to indicate that they are untrue, then jurisdiction is established, while if the answer denies a jurisdictional allegation the truth of that allegation must be determined like that of any other contested allegation in a lawsuit. See, e.g., *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979); *Western Transport. Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033, 1038 (7th Cir.1982).

■ Casio's complaint omitted essential jurisdictional allegations; and though neither the parties nor the district judge noticed this till after the judge had rendered his decision on the merits, it was not too late even then for SM & R to question the court's jurisdiction. See Fed.R.Civ.P. 12(h)(3); cf. *Honneus v. Donovan*, 691 F.2d 1, 2 (1st Cir.1982) (per curiam). We must therefore decide whether there was enough evidence in the record to support the district judge's rejection of SM & R's motion to dismiss. If there was, the deficiency in the complaint is not fatal. See Fed.R. Civ.P. 15(b).

■ A finding of jurisdictional fact made in denying a post-judgment motion is not subject to Rule 52(a); see last sentence of rule. Nevertheless the same standard of appellate review set forth in Rule 52(a) for findings of fact in orders that are subject to the rule (orders deciding bench trials)—the "clearly erroneous" standard—should be followed. See *Western Transport. Co. v. Couzens Warehouse & Distributors, Inc.*, supra, 695 F.2d at 1038; cf. *Village Fair Shopping Center Co. v. Sam Broadhead Trust*, 588 F.2d 431, 433–34 (5th Cir.1979); 1 Moore's Federal Practice ¶ 0.74[1], at p. 707.5 (2d ed. 1984). It is the character of the judge's finding as a finding of fact, rather than the character of the decision in which it is embodied, that brings the "clearly erroneous" standard into play.

■ In applying that standard here, we begin by noting the uncontroverted evidence that SM & R's principal place of business is in Illinois, the state where it is also incorporated. Since Casio is not incorporated in Illinois, the only thing that would destroy diversity would be for Casio to have its principal place of business in Illinois. All of SM & R's dealings with Casio (after an initial meeting at SM & R's headquarters in Illinois) took the form of correspondence with Casio officials in New Jersey or (to a much lesser extent) California, except for dealings with Casio's midwestern sales representative—who was, however, an independent contractor, rather than Casio's employee. Casio's consumer warranty and letterhead list the address of the company as New Jersey, and Casio's national operations manager has his office there. Although the evidence that Casio's principal place of business is in New Jersey is thinner than it would have been if the district judge had ordered an evidentiary hearing on the post-judgment motion to dismiss, and maybe that would have been the better course of action in view of the importance of confining the jurisdiction of the federal courts within the boundaries established by the Constitution and Congress, the record contains enough evidence that Casio's principal place of business— wherever it is (probably in New Jersey)—is not in Illinois to make the district court's finding that the parties were of diverse citizenship not clearly erroneous.

■ Before turning to the merits, we comment very briefly on choice of law. The district judge stated in his conclusions of law that "because this is a diversity action, Illinois law provides the rules of decision." This is not quite accurate. Because this is a diversity suit the district court must use Illinois' choice of law principles to determine what state's substantive

rules ("rules of decision") to apply to the parties' dispute. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The forum state's substantive rules are applicable only if the forum state's choice of law rules make them applicable. See *Lloyd v. Loeffler,* 694 F.2d 489, 495 (7th Cir.1982). But since the parties do not contest the application of Illinois substantive law, the district court's error is immaterial. Parties can within broad limits stipulate the substantive law to be applied to their dispute, and that is what we deem them to have done here by not objecting to the district judge's application of the substantive law of Illinois to their dispute. See *Id.; Gonzalez v. Volvo of America Corp.,* 752 F.2d 295, at 299 (7th Cir. Jan. 4, 1985); *Central Soya Co. v. Epstein Fisheries, Inc.,* 676 F.2d 939, 941 (7th Cir.1982).

◼ There are two issues on the merits. The first is whether the sales contract under which Casio sold watches to SM & R allowed SM & R to return them for a credit (or replacement of merchandise) only if they had been delivered to SM & R in a defective state (either factory defective or damaged in transit), as Casio contends and the district judge found; or whether SM & R could return any watches that its retail customers returned to it pursuant to its "customer satisfaction guaranteed or your money back" retail sales policy. Because SM & R will allow its customers to return merchandise with no questions asked, there are many more returns than there are actually defective items.

The contract between the two companies was embodied in a series of purchase orders none of which spells out Casio's policy on returns, though one contains the handwritten notation, "defective return policy." In circumstances of such ambiguity the district judge had to take oral evidence to determine the relevant terms of the contract. See, e.g., *Weiland Tool & Mfg. Co. v. Whitney,* 44 Ill.2d 105, 114–15, 251 N.E.2d 242, 247 (1969); *Sanchez v. Walls,* 59 Ill.App.3d 75, 78, 16 Ill.Dec. 507, 509, 375 N.E.2d 138, 140 (1978); *Construction*

*Aggregates Corp. v. Hewitt-Robins, Inc.,* 404 F.2d 505, 509 (7th Cir.1968); *Western Industries, Inc. v. Newcor Canada, Ltd.,* 739 F.2d 1198, 1205 (7th Cir.1984). Casio's midwestern sales representative, who had participated in the negotiations with SM & R, testified that he had explained during the negotiations that Casio would accept returns only of defective watches, that is, watches defective when sold or delivered by Casio ("initial failure"). SM & R's witnesses, though they testified they did not remember such a discussion, did not deny that it might have taken place. In any event the district judge chose to believe Casio's witness, as he was entitled to do. Casio sells to many different retailers, who have many different policies concerning customer returns. The more generous the policy—and SM & R's is as generous as any—the more costly Casio would find dealing with the retailer if Casio were committed to taking back any merchandise that the retailer's customers had returned. Casio could protect itself by charging different prices to different retailers according to their return policies; but there is no evidence Casio does this, and a much simpler approach is to have a uniform policy on returns, independent of its customers' policies.

◼ SM & R also argues, however, that Casio should be estopped to enforce this policy because it refused to respond, positively or negatively, to SM & R's repeated requests for return authorization. Words like "estoppel," "bad faith," and "waiver" receive much play in SM & R's briefs but at bottom all SM & R is claiming is that it should be excused from its contractual obligations because Casio broke its part of the bargain first.

Before Casio will accept a return of merchandise, the customer must submit a written request for authorization. SM & R submitted such a request on January 7, 1980, covering eight watches, but the request was not acknowledged. Around the same time SM & R shipped back 44 watches, apparently without having submitted any request for authorization to re-

turn them. Casio refused to accept the shipment and the watches went back to SM & R. Then in a three-month period beginning at the end of June 1981 SM & R sent Casio four written requests for return authorization, none of which Casio explicitly acknowledged although it did write SM & R in September saying that returns would not be authorized if no reasons for the returns were given.

We can dispose quickly of the attempted return of the 44 watches. Casio's refusal to accept them was not a breach of contract. The procedure for returns, with which SM & R on this occasion did not comply, was a part of the contract between the parties and a reasonable method of protecting Casio from being flooded with unjustified returns. However, Casio's several failures to acknowledge requests for return authorization could well be viewed as breaking an implied term of the contract with SM & R; for if Casio on the one hand requires a request before it will authorize a return and on the other hand refuses to acknowledge such requests when received, its customers will be unable to return even defective merchandise, as their contract with Casio entitles them to do.

This breach would have been material if SM & R had been requesting authorization to return *defective* merchandise. But evidence that the district court was entitled to and did credit indicates that SM & R's requests were—judging by the volume of merchandise covered by them—requests for authorization to return watches most of which were not defective but simply had been taken back by SM & R in accordance with its "customer satisfaction guaranteed" policy. Casio was not required to honor such requests. Even so, it might have been required to acknowledge rather than just bury them, in order not to leave SM & R in doubt about its rights under the contract. But all the requests except that of January 7, 1980, came after Casio filed suit in June of 81. They may well have been designed to strengthen SM & R's litigating hand. But in any event there could be no misapprehension in SM & R's collective mind as to why it was not hearing back from Casio; the suit had been brought, as SM & R well knew, because Casio refused to accede to SM & R's interpretation of the return provision of the contract. Moreover, the watches for which SM & R owes Casio $38,235 were bought in August 1980, well before the flurry of requests (which began the following June) that Casio did not acknowledge; and Casio's failure to acknowledge a request for authorization to return eight watches in January 1980 could hardly have lulled SM & R into thinking in August that it had an unlimited right of return. There is thus no causal connection between Casio's failure to acknowledge SM & R's requests for return authorization and the debt to Casio that SM & R ran up and now seeks to avoid. That debt resulted from SM & R's buying watches from Casio, not from Casio's failure to acknowledge requests that it had no contractual duty to grant.

■ The doctrine of conditions, which—sometimes—allows a party to terminate a contract because the other party has failed to keep his part of the bargain, is designed to create a self-help remedy proportionate to the need. "But it is not in society's interest to permit a party to abuse this protection by using an insignificant breach as a pretext for avoiding his contractual obligations." Farnsworth, Contracts § 8.15, at p. 607 (1982). These words—accurately descriptive of Illinois law, see, e.g., *Circle Security Agency, Inc. v. Ross,* 107 Ill.App.3d 195, 202–03, 63 Ill.Dec. 18, 23, 437 N.E.2d 667, 672 (1982); *Hanson v. Duffy,* 106 Ill.App.3d 727, 732, 62 Ill.Dec. 401, 406, 435 N.E.2d 1373, 1378 (1982); *Maywood Sportservice, Inc. v. Maywood Park Trotting Ass'n, Inc.,* 14 Ill.App.3d 141, 149, 302 N.E.2d 79, 84 (1973); *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.,* 692 F.2d 1143, 1146–47 (7th Cir.1982)—could have been written with this case in mind.

Of course some of the watches for which SM & R has refused to pay Casio may actually be defective, but SM & R has never attempted to identify which those

are. Rejection of nonconforming goods must be made within a "reasonable time" after delivery, UCC § 2–602, Ill.Rev.Stat. 1981, ch. 26, 2–602, to give the seller a chance to resell the goods before they become hopelessly depreciated. We may assume without having to decide that SM & R did not have to inspect the watches when they arrived but could wait till they were returned by dissatisfied customers. But it had to act promptly after that, and not wait years as it has done.

The judgment for Casio is

AFFIRMED.