**FIREMAN'S FUND MORTGAGE CORP., etc., Plaintiff,**

v.

**Mondell ZOLLICOFFER, et al., Defendants.**

No. 87 C 1230.

United States District Court, N.D. Illinois, E.D.

June 1, 1989.

Barry M. Fisher, Fisher and Fisher, John K. Kallman, Mark P. Naughton, Rudnick & Wolfe, Michael L. Daugherty, Rudnick & Wolfe, Richard S. Huszagh, Chicago, Ill., for plaintiff.

Anthony B. Bass, Joseph H. Sanders, COOK COUNTY EXAMINER OF TITLES, Chicago, Joseph J. DeMichael, Elmore & DeMichael, Oak Forest, Ill., for defendants.

## ORDER

NORGLE, District Judge.

This matter is before the court on the motion of Fireman's Fund Mortgage Corp. ("FFMC") for summary judgment on its Complaint to foreclose Mortgage and on defendants' counterclaims, pursuant to Fed.R.Civ.P. 56(b). For the following reasons, FFMC's motion is granted.

## DISCUSSION

FFMC, formerly Manufacturers Hanover Mortgage Corporation, is the mortgagor of certain residential property (the "Premises") under the Mortgage and accompanying Promissory Note ("Note") executed by Mondell and Shirley Zollicoffer (the "Zollicoffers"). The Zollicoffers made two payments under the Note and Mortgage. The Zollicoffers failed to make the third payment due on July 1, 1986 and have not made any further payments under the Note and Mortgage. They are currently 33 payments, or approximately $94,768.28, in arrears under the Note and Mortgage. FFMC accelerated the Note and Mortgage and filed its Complaint to Foreclose Mortgage on February 13, 1987. The Zollicoffers have admitted that they have not made the payments required under the Note and Mortgage, but assert that their failure to make mortgage payments are "minor breaches" and that certain actions taken by FFMC to secure the premises, after the Zollicoffers had already defaulted on four payments, constituted a material breach of the Mortgage, thereby relieving the Zollicoffers of their obligations under the Note and Mortgage. FFMC's actions in securing the premises, in addition to providing an affirmative defense, are also the basis of counterclaims asserted by the Zollicoffers for Trespass to Land, Breach of Mortgage Contract, Violation of Statutory Remedies, Breach of Implied Covenant of Good Faith and Fair Dealing, Forcible Entry, Conversion and Punitive Damages (the "Counterclaims"). During the pendency of this action, Mondell Zollicoffer died. In addition to her individual status as a defendant and counter-plaintiff, Shirley Zollicoffer, as administrix of Mondell Zollicoffer's estate, has been substituted for him as defendant and counter-plaintiff on the surviving Counterclaims.

## SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plain-

tiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see also First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

In addition to the requirements of Rule 56(c), the parties must comply with Local General Rule 12. FFMC has complied with Local General Rule 12 by submitting a separate, appropriately captioned statement of material facts as to which they contend there is no genuine issue and upon which they allege entitlement to judgment. Specific references are made to the record to support their assertion as to each material fact. *See Abrams v. City of Chicago,* 635 F.Supp. 169, 171–72 (N.D.Ill.1986). The Zollicoffers, as is required by Local General Rule 12, have responded to the facts as stated by FFMC, in substance admitting to the majority of them. As for the facts with which the Zollicoffers have disagreements, their assertions are either unsupported by the record or amount to legal conclusions. The Zollicoffers, also pursuant to Local General Rule 12, have submitted their own statement of undisputed facts. However, many of the facts they submit are unsupported by the record, equivalent to those submitted by FFMC or immaterial. Moreover, numerous proposed facts are contrary to Local General Rule 12 in that they do not contain references to the record. *See* Defendant's Proposed Statement of Uncontested Fact ¶¶ 7, 9, 15, 18, 20, 22, 23, 27, 38. The facts submitted by FFMC are largely supported by the record and present an accurate picture of the facts of this case based upon that record.

## UNDISPUTED MATERIAL FACTS

The court adopts the plaintiff's statement of material facts, with editing, as the undisputed material facts in this matter:

1. On March 21, 1986, the Zollicoffers executed, in favor of FFMC, the Note and the Mortgage securing the Note in connection with the purchase of a single-family residence in Country Club Hills, Illinois. (Complaint ¶ 4(b), (c)(i); Answer ¶ 4). FFMC's loan to the Zollicoffers was insured by the United States Federal Housing Administration (the "FHA"). (Vitale aff. ¶ 9). The Note and Mortgage provide for monthly payments due on the first of each month, commencing on May 1, 1986, in the amount of $710, consisting of principal and interest on the Note and a provision for taxes and insurance. (Vitale Aff. Ex. A–C).

2. The Note provides, in pertinent part, as follows:

Upon default in the payment of any such installment of principal and interest for a period of thirty (30) days after the due date thereof, the holder of this note may, at its option, and without notice, declare all the unpaid principal and accrued interest on said note immediately due and payable.

3. The Mortgage further provides that the mortgagor covenants and agrees:

To keep said premises in good repair, and not to do, or permit to be done, upon said premises anything that may impair the value thereof, or of the security intended to be effected by virtue of this instrument;

In case of the refusal or neglect of the Mortgagor to make such payments, ... or to keep said premises in good repair, the Mortgagee may pay such taxes, assessments, and insurance premiums, when due, and may make such repairs to the property herein mortgaged as in its discretion it may deem necessary for the proper preservation thereof, and any moneys so paid or expended shall become so much additional indebtedness, secured by this mortgage, to be paid out of proceeds of the sale of the mortgaged prem-

ises, if not otherwise paid by the Mortgagor.

In the event of default in making any monthly payment provided for herein and in the note secured hereby for a period of thirty (30) days after the due date thereof, or in a case of a breach of any other covenant or agreement herein stipulated, then the whole of said principal sum remaining unpaid together with accrued interest thereon, shall, at the election of the Mortgagee, without notice, become immediately due and payable.

4. The regulations of the Department of Housing and Urban Development ("HUD"), applicable by virtue of the FHA loan guarantee, further provide (24 C.F.R. ch 11, §§ 203.377, 203.378):

§ 203.377 Inspection and preservation of properties.

The mortgagee, upon learning that a property subject to a mortgage insured under this part, is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such vacant or abandoned security property until its conveyance to the Commissioner, if such action does not constitute an illegal trespass.

§ 203.378 Property condition

(b) ... However, the mortgagee shall be responsible for damage to or destruction of security properties on which the loans are in default and which properties are vacant or abandoned due to the mortgagee's failure to take reasonable action to inspect, protect and preserve such properties as required by § 203.377....

5. The Zollicoffers paid the May and June, 1986 installments on the Mortgage, but failed to pay the July, 1986 installment, or any installment thereafter to this day. (Vitale Aff. ¶¶ 11, 12).

6. Without telling Mr. Zollicoffer, Mrs. Zollicoffer moved out of the house with the Zollicoffer's children on July 31, 1986. (Shirley Dep. at 17, 90; Mondell Dep. at 7). Before leaving, Mrs. Zollicoffer was paying the utilities, but she stopped paying them when she moved out. (Shirley Dep. at 50). Sometime thereafter, the electricity was shut off. (Mondell Dep. at 20, 22). Two months after the Zollicoffers moved into the residence, someone had broken into the house through a rear window at ground level, but the Zollicoffers did not repair this broken window. (Mondell Dep. at 19; Shirley Dep. at 38).

7. On August 28, 1986, Mr. Zollicoffer spoke with a FFMC representative regarding the default under the Note and Mortgage. (Mondell Dep. at 18; Bryant Aff. ¶ 16). Mr. Zollicoffer promised to make semi-monthly mortgage payments, on the first and sixteenth days of each month, starting September 16, 1986, to bring the loan current. He did not live up to his promise, however, and made no payments whatsoever. (Mondell Dep. at 14, 17; Bryant Aff. ¶ 6).

8. During this time, Mr. Zollicoffer was working as an over-the-road truck driver which routinely took him away from the residence for several days at a time. (Mondell Dep. at 7; Shirley Dep. at 85–87).

9. On September 9, 1986, Mrs. Zollicoffer came to the house and removed all the furniture from the upstairs area and from the dining room on the ground floor. The living room on the ground floor was also empty. (Shirley Dep. at 21, 23–25). Although she left some furniture in the downstairs bedroom, this could not be seen from the outside of the house, so the only thing visible from the exterior was the kitchen table and refrigerator. (Shirley Dep. at 23, 27, 89, 96). The fence outside the house was falling down, and the garage, which was locked and had no windows, housed a broken car. (Mondell Dep. at 13, Shirley Dep. at 26, 97).

10. In early September, 1986, FFMC requested a company specializing in property

**654**

inspections to conduct a visual inspection of the Zollicoffer residence. (Bryant Aff. ¶ 7). This company reported that the residence was vacant; the electricity was shut off; there was a broken window at ground level; several other windows were unlocked; and a neighbor confirmed that the property had been vacant for a short time. (Bryant Aff. ¶ 7, Ex. B). The company also recommended that the house be secured with wire screening. (*Id.*)

11. On October 6, 1986, Jill Bryant, an FFMC loan counselor who had taken over responsibility for the Zollicoffer's mortgage loan file, tried to call the Zollicoffers at the residence, but the phone was disconnected and no alternate phone numbers were available from the telephone company. (Bryant Aff. ¶ 9; Shirley Dep. at 50). On the same day, Ms. Bryant sent the Zollicoffers a letter by certified mail stating that the property had been reported vacant and appeared abandoned, and that it would be secured within five days at the Zollicoffer's expense. (Bryant Aff. ¶ 10, Ex. C). This letter also noted that, because no payments were being made on the mortgage, FFMC would institute foreclosure proceedings unless the Zollicoffers immediately contacted the company. (*Id.*) Ms. Bryant simultaneously mailed the Zollicoffers a notice of FFMC's intention to foreclose unless the default was cured or the company was contacted "to work out a plan for repayment." This letter further advised that, if the default was due to a condition such as illness or unemployment, the Department of Housing and Urban Development might be able to help the Zollicoffers. A financial information statement was enclosed for this purpose. The Zollicoffers admit receipt of these letters. Response to Plaintiffs' Proposed Statement of Uncontested Facts ¶ 11. (Bryant Aff. ¶ 11, Ex. D).

12. Around mid-October, FFMC, not having heard from the Zollicoffers, had the residence secured, placing wire screens over the windows. (Mondell Dep. at 9–10, 13; Bryant Aff. ¶¶ 13, 19). Mr. Zollicoffer testified that at this time he was not working due to illness and was living at the residence, albeit without any electricity, but he was unavailable to sign the certified

mail receipt for FFMC's October 6 notice of its intent to secure the property until two weeks later, on October 20, 1986. (Mondell Dep. at 22–23; Vitale Aff. ¶ 10, Ex. D). Moreover, Mondell Zollicoffer was present at, or near, the premises at the time they were secured and did not inform FFMC's agents, who were in the process of securing the premises, that the premises were not abandoned. Response to Plaintiff's Proposed Statement of Uncontested Facts at ¶ 12; Defendants' Proposed Statement of Uncontested Facts at ¶ 17.

13. On October 17, 1986, Jill Bryant sent the Zollicoffers another letter outlining various options they could pursue, and advising that, unless they responded within seven days, FFMC would have "no alternative but to recommend foreclosure." (Bryant Aff. ¶ 14; Ex. E).

14. Although he knew the house had been secured at the time it was secured, Mr. Zollicoffer did nothing about the house for two weeks, at which time he contacted the Zollicoffer's broker, Ms. Cavanaugh. (Mondell Dep. at 10). On October 29, 1986, a telephone message was left with FFMC leaving a telephone number for Mr. Zollicoffer and indicating that the house was not vacant. Ms. Bryant immediately ordered an inspection of the property. (Bryant Aff. ¶ 16). She also telephoned the number listed on the telephone message and left a message for Mr. Zollicoffer with the person who identified herself as a friend of Mr. Zollicoffer, but said he was not there. Ms. Bryant on the same day also called Mr. Zollicoffer's place of employment and left another message for him (Bryant Aff. ¶ 17–18).

15. The follow-up field inspection confirmed that the residence was still vacant and secure. (Bryant Aff. ¶ 19). Ms. Bryant then left another message with Mr. Zollicoffer's place of employment on November 12, 1986. (Bryant Aff. ¶ 21). By this time, FFMC had made, by telephone or letter, eight unsuccessful efforts to contact the Zollicoffers, who had not made a single mortgage payment in over five months. (Bryant Aff. ¶¶ 9–21).

16. On November 21, 1986, Mr. Zollicoffer telephoned Ms. Bryant. (Bryant Aff.

¶ 22). He told her that he had seen workmen securing his home one day when he came home from work. (*Id.*) Mr. Zollicoffer also discussed his ability to make payments of the past due amounts under the Mortgage. Mr. Zollicoffer said he wanted to make payments of $1,000 per month, but that he had no money with which to make any payments. (Bryant Aff. ¶ 22). Ms. Bryant put him on hold in order to speak to her superiors about the possibility of a repayment plan, but despite being told that he should stay on the line due to the difficulty in getting in touch with him, Mr. Zollicoffer had hung up before Ms. Bryant could return to the phone. (*Id.*)

17. During this time, Mrs. Zollicoffer had no communications with FFMC and also was making no payments on the mortgage. (Shirley Dep. at 16, 45).

18. In early 1987, FFMC filed this foreclosure action. Shortly thereafter, the Zollilcoffers moved back into their residence with the knowledge of FFMC. (Mondell Dep. at 5; Shirley Dep at 17).

19. During the pendency of these proceedings, the Zollicoffers still have not made any payments under the Note and Mortgage. The Zollicoffers admit knowing that they were in default and that they had missed, as of August, 1988, over 20 payments. (Mondell Dep. at 7, Shirley Dep. at 49). The number of these defaulted payments has now grown to 33. The outstanding unpaid balance of the loan, as of March 14, 1989, was $93,589.94, and this balance as of May 31, 1989, will be $94,768.28). (Vitale Aff ¶¶ 13–14).

Based on the foregoing, the court concludes that there is no genuine dispute over any fact material to the court's determination that FFMC is entitled to judgment in its favor as a matter of law on its Complaint to Foreclose Mortgage, as well as on the Zollicoffers' counterclaims.

## FFMC IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS COMPLAINT TO FORECLOSE MORTGAGE

Under the Note and Mortgage executed by the Zollicoffers on March 21, 1986, one of their obligations was to make monthly installment payments of $710.00 on the first day of each month, commencing on May 1, 1986, until the principal amount of $65,653.00 plus interest was paid. It is undisputed that the Zollicoffers made only the first two payments under the Note and Mortgage, in May and June of 1986, and have not made a single payment since then.

In order to avoid the inevitable consequences of their failure to make mortgage payments—default under the Note & Mortgage—the Zollicoffers assert that their failure to make mortgage payments "can at worst be considered minor breaches." Memorandum in Response to Plaintiffs' Motion for Summary Judgment at 4. This assertion is so contrary to law and reason as to almost defy comment.

A party's failure to perform even a minor contractual term constitutes a breach. *Midland Hotel v. Reuben H. Donnelley Corp.*, 149 Ill.App.3d 53, 103 Ill.Dec. 742, 748, 501 N.E.2d 1280, 1286 (1st Dist.1986), *aff'd in part rev'd in part*, 118 Ill.2d 306, 113 Ill.Dec. 252, 515 N.E.2d 61 (1987). Yet, minor or technical breaches by one party to the contract do not amount to a default which excuses the other party's performance. *See Piro v. Pekin Ins. Co.*, 162 Ill.App.3d 225, 113 Ill.Dec. 220, 223, 514 N.E.2d 1231, 1234 (5th Dist.1987); *Circle Security Agency, Inc. v. Ross*, 107 Ill. App.3d 195, 63 Ill.Dec. 18, 23, 437 N.E.2d 667, 672 (1st Dist.1982); *Hanson v. Duffy*, 106 Ill.App.3d 727, 62 Ill.Dec. 401, 406, 435 N.E.2d 1373, 1378 (2d Dist.1982). Only a material breach constitutes a default. *Eastern Illinois Trust & Savings Bank v. Sanders*, 631 F.Supp. 1393, 1396 (N.D. Ill. 1986) *aff'd*, 826 F.2d 615 (7th Cir.1987). A breach is material when it amounts to the failure to perform an important or substantial obligation under the contract. *Anderson v. Long Grove Country Club Estates, Inc.*, 111 Ill.App.2d 127, 249 N.E.2d 343, 349 (2d Dist.1969). Among the factors to consider in determining whether a breach is material are whether the breach worked to defeat the bargained for objec-

tive of the parties; whether the breach caused disproportionate prejudice to the nonbreaching party; and whether custom and usage considers such a breach to be material. *Eastern Illinois*, 631 F.Supp. at 1396; *Sahadi v. Continental Illinois National Bank & Trust Co.*, 706 F.2d 193, 196 (7th Cir.1983).

In the instant case, all of the above inquiries must be answered in the affirmative. The Zollicoffers' failure to make mortgage payments was not a minor or technical breach. Rather, it was a material breach. Illinois courts have consistently held that breach of the duty to make payments under a contract is material. *See, e.g., F.E. Holmes & Son Construction Co., Inc. v. Gualdoni Electric Service, Inc.*, 105 Ill.App.3d 1135, 61 Ill.Dec. 883, 886, 435 N.E.2d 724, 727 (5th Dist.1982) (failure to make installment payments under construction contract is a material breach); *B & C Electric, Inc. v. Pullman Bank and Trust Co.*, 96 Ill.App.3d 321, 51 Ill.Dec. 698, 713, 421 N.E.2d 206, 211 (1st Dist.1981); *Brady Brick & Supply Co. v. Lotito*, 43 Ill.App.3d 69, 1 Ill.Dec. 844, 848, 356 N.E.2d 1126, 1130 (2d Dist.1976); *Watson v. Auburn Iron Works, Inc.*, 23 Ill.App.3d 265, 318 N.E.2d 508, 511 (2d Dist.1974). This principal finds its strongest application with respect to breach of the obligation to make payment under notes and mortgages. The Zollicoffer's obligation to make monthly mortgage payments was their primary obligation under the Mortgage, and their only obligation under the Note, default under which constituted default under the Mortgage. The Note and Mortgage both expressly provide that missing a payment is grounds for FFMC placing the Zollicoffers in default. The Zollicoffers cite no cases in support of their proposition that failure to make four mortgage payments is only a "minor" breach of a note and mortgage. There are none. That failure to make four mortgage payments could be found to be anything other than a material breach is totally unsupported by Illinois law. For the Zollicoffers' counsel to advance such an argument flirts with Rule 11.

■ The Zollicoffers next assert that the actions taken by FFMC in mid-October, 1986 to secure the Premises, which allegedly were wrongful and in breach of the Mortgage, relieve them of their obligation under the Note and Mortgage to make monthly payments. Even assuming that FFMC's actions to secure the Premises were wrongful and in breach of the Mortgage (which they were not), they do not provide an affirmative defense nor do they relieve the Zollicoffers of their obligations under the Note and Mortgage.

Once performance of an obligation under a contract is due, failure to perform the obligation amounts to a breach. *See State Dept. of Agr. v. Ackerman*, 34 Ill.App.3d 796, 341 N.E.2d 48, 51 (5th Dist.1976) ("the breach of duty to pay is an instantaneous occurrence that coincides with the moment at which the duty arises, ...). As discussed above, in the case of payments under a note and mortgage, the failure to make payments when due is a material breach, placing the nonperforming party in default. One party's *prior* material breach will excuse the other party's performance. *Sahadi*, 706 F.2d at 196. However, it is axiomatic that only where an obligation under a contract is excused *before* it is due will nonperformance of that obligation not amount to a breach. Here, FFMC's conduct in securing the Premises did not occur until mid-October, 1986, after the Zollicoffers had already failed to make mortgage payments for the months of July 1986, August 1986, September 1986 and October 1986. FFMC's conduct in mid-October 1986 could not retroactively discharge the Zollicoffers' obligations due under the Note and Mortgage during the previous four months. Therefore, the Zollicoffers' obligation to make payments under the Note and Mortgage in July 1986, August 1986, September 1986 and October 1986 was unaltered. The Zollicoffers' failure to make these monthly payments is an undisputed fact which places them in default and entitles FFMC to summary judgment on its Complaint to Foreclose Mortgage.[1]

**1.** The court is also mindful that FFMC gave the

Zollicoffers additional opportunities to cure the

## COUNTERCLAIMS

FFMC is also entitled to summary judgment in its favor on the Zollicoffers counterclaims for Trespass to Land, Breach of Mortgage Contract, Violation of Statutory Remedies, Breach of Implied Covenant of Good Faith and Fair Dealing and Forcible Entry, which arise out of, and have as their basis, the actions taken by FFMC in mid-October, 1986 to secure the Premises.[2]

## THE ZOLLICOFFERS' PRIOR MATERIAL BREACH PREVENTS THEIR RECOVERY BASED UPON FFMC'S ALLEGED BREACH OF EXPRESS AND IMPLIED CONTRACTUAL TERMS

■ The prerequisites to recovery for breach of contract are existence of the contract, plaintiffs' performance of his contractual obligations, breach by defendant and damages. *Redfield v. Continental Casualty Co.*, 818 F.2d 596, 610 (7th Cir. 1987); *Premier Electrical Const. Co. v. Chicago*, 159 Ill.App.3d 98, 111 Ill.Dec. 140, 143, 512 N.E.2d 44, 47 (1st Dist.1987); *Goldstein v. Lustig*, 154 Ill.App.3d 595, 107 Ill.Dec. 500, 503–04, 507 N.E.2d 164, 167–68 (1st Dist.1987). Thus, a party who has materially breached a contract cannot recover under the contract. *Daniggelis v. Pivan*, 159 Ill.App.3d 1097, 111 Ill.Dec. 846, 850, 513 N.E.2d 92, 96 (1st Dist.1987); *Goldstein*, 107 Ill.Dec. at 504, 507 N.E.2d at 168.

Therefore, under Illinois law, the Zollicoffers' material breaches of the Mortgage and Note in July, 1986 through October of 1986, prior to any alleged breach by FFMC, precludes the Zollicoffers' recovery under their counterclaim for Breach of Mortgage Contract. The court also holds that, just as their prior material breaches are a bar to the Zollicoffers' recovery under express terms of the Mortgage, they are a bar to their recovery under any implied terms of the Mortgage. FFMC is entitled to summary judgment on the Zollicoffers' counter-

claim for Breach of Implied Covenant of Good Faith and Fair Dealing, as well as on the counterclaim for Breach of Mortgage Contract.

## FFMC'S ACTIONS TO SECURE THE PREMISES WERE WITHIN ITS RIGHTS UNDER THE MORTGAGE, REQUIRED BY HUD REGULATIONS, REASONABLE AND ACTUALLY CONSENTED TO BY THE ZOLLICOFFERS

■ The Mortgage required the Zollicoffers not to do, or permit anything to be done, to the Premises which would impair its value as security for the loan evidenced by the Note and Mortgage. Mortgage at 1. In the event, the Zollicoffers impaired the security value of the Premises under the Mortgage, FFMC had the right to make such repairs necessary for the preservation of the Premises' value as security. Mortgage at 2.

Moreover, HUD regulations transformed FFMC's right, under the Mortgage, to preserve the security value of the Premises into an obligation. FFMC has included as a material fact, and the Zollicoffers have admitted, that the loan from FFMC to the Zollicoffers was insured by the FHA. HUD regulations applicable to loans insured by the FHA, require the mortgagee, in the event the loan is in default for over 45 days and the mortgagee learns that the property serving as security for the loan is vacant, to conduct at least monthly inspections of the property and "take such action to protect such vacant or abandoned security property ... if such action does not constitute an illegal trespass." 24 C.F.R. ch. 11, § 203.377 (1976). If the mortgagee fails to do so it will be responsible for any resulting damage or destruction of the security properties. 24 C.F.R. ch. 11, § 203.378 (1976).

---

deficiencies under the Note and Mortgage, which it was not required to do, and that the Zollicoffers failed to do so.

**2.** The Zollicoffers' "counterclaim" for punitive damages, as discussed in the court's order of February 27, 1986, is not an independent claim.

Rather, it seeks punitive damages to the extent they are justified under the other Counterclaims. As the court concludes that FFMC is entitled to summary judgment on all Counterclaims, punitive damages need not be discussed.

The undisputed facts demonstrate that FFMC's actions to secure the Premises were within its rights under the Mortgage, in fulfillment of its obligations under applicable HUD regulations, did not constitute an unlawful trespass and thus do not provide the basis for any of the Zollicoffers' counterclaims.

At the time FFMC secured the Premises, the Zollicoffers had already defaulted under the Note and Mortgage, being four monthly payments in arrears. Therefore, a 45 day period of default had already elapsed triggering FFMC's obligations under 24 C.F.R. ch. 11, § 203.377. All of the evidence indicates that FFMC reasonably believed that the Premises were abandoned. An inspection company informed FFMC that the Premises appeared vacant and that the yard surrounding the Premises was unkept. The Zollicoffers admit that the telephone and electrical utilities were disconnected, and a ground level window broken. FFMC, after numerous attempts, was unsuccessful at contacting the Zollicoffers or anyone else on the Premises.

■ The court concludes that the issue is the reasonableness of FFMC's belief that the Premises were abandoned, not the actual status of the Premises. Thus, the inspection company report, upon which in part FFMC based its conclusion that the Premises were abandoned, though unverified, is properly part of the record which demonstrates that FFMC's actions were reasonable. FFMC did all that they could reasonably be required to do to determine the status of the Premises. No reasonable jury could conclude otherwise. Moreover, even absent the information FFMC received from the inspection company, FFMC's actions were reasonable. After not receiving four mortgage payments, FFMC repeatedly attempted to contact the Zollicoffers, calling them and sending letters to warn them of the ramifications of their default and of FFMC's intention to secure the Premises based on its belief that they were abandoned. The Zollicoffers acknowledged receipt of these letters only after the Premises were secured. The Zollicoffers' inability, or possibly refusal, to accept the certified letters only reinforced FFMC's reasonable belief that the Premises had been abandoned. More importantly, it is also undisputed that Mondell Zollicoffer was present at or near the Premises at the time FFMC's agents were securing the Premises. He observed them securing the Premises, yet did nothing to stop them, such as simply informing them that the Premises were not abandoned. He apparently just walked away. This undisputed fact alone entitles FFMC to summary judgment on the Counterclaims.

Certainly, had a third party entered the Premises, the Zollicoffers would not be prevented from claiming trespass, or some other wrong, by their mere failure to object when the conduct occurred. Yet, FFMC and the Zollicoffers are not unrelated parties. They have a contractual relationship between them which incorporates HUD regulations imposing obligations on FFMC. The Zollicoffers are charged with constructive knowledge of these HUD regulations. FFMC made the reasonable inquiries it was required to make by HUD regulations. FFMC's impression that the Premises were abandoned was largely due to the Zollicoffer's conduct. By not accepting FFMC's letters and by not stopping FFMC from securing the Premises even though he was present, Mondell Zollicoffer effectively consented to FFMC securing the Premises. The Zollicoffers are now estopped to assert causes of action based upon conduct by FFMC which, due to an existing contractual relationship and regulatory obligations, the Zollicoffers knew FFMC was required to undertake and to which the Zollicoffers did not object at the time.

FFMC's entry onto the Premises was peaceable and limited to the purpose intended—securing the home. It did not amount to taking possession. The court will not interpret HUD regulations to require FFMC to initiate a foreclosure proceeding and be awarded possession of the Premises before it can perform its obligations under 24 C.F.R. ch. 11, § 203.377. Such an interpretation would prevent the fast action to prevent depletion of security which § 203.377 requires. There is absolutely no indication that FFMC secured the Premises

as part of a strategy to coerce the Zollicoffers to perform their obligations under the Note and Mortgage. The court will not impose liability on FFMC, under any of the theories offered by the Zollicoffers, under these facts, where FFMC has acted reasonably and in good faith in performing its obligations under HUD regulations and is mistaken, through no fault of its own, that the Premises were abandoned.

Finally, there is no indication that anything physically prevented the Zollicoffers from removing the materials securing their home and reentering. Yet, the Zollicoffers waited over two weeks before contacting anyone about reentering the Premises. The Zollicoffers allegations that FFMC representatives told third parties that the Zollicoffers could not enter the Premises are unsupported by affidavit, and thus hearsay. FFMC cannot be held responsible for any mistaken impression of the Zollicoffers regarding their rights in the Premises after it was secured. Mondell Dep. at 16.

### CONCLUSION

In sum, FFMC is granted summary judgment on its Complaint to Foreclose Mortgage and on all of the Zollicoffers' Counterclaims.

IT IS SO ORDERED.